HALL et al., *Appellants*, v. FARMERS AND MERCHANTS'
BANK et al.

## Division Two, July 6, 1898.

1. **Administrator:** CONTROL OF REAL ESTATE. The administrator
has no control of the real estate of decedent unless the probate court
by an order of record direct him to take possession of the land and
rent it for the purpose of obtaining money for the payment of debts,
and then he can maintain a suit for the possession of the land. But
unless such order is made, the possession of the land, as well as the
defense of the title, belong to the heirs or devisees and not to the
legal representative of decedent.

2. **Equity:** EJECTMENT: SUIT BY ADMINISTRATOR. An administrator,
without first obtaining an order of the probate court directing him to
take possession of the land for the payment of debts, can not main-
tain a suit in equity to set aside a fraudulent deed made by deceased,
nor one in ejectment to recover possession of the land so conveyed.

3. **National Banks:** CONVEYANCES TO, OF REAL ESTATE. National
banks have no power to acquire and hold title to real estate in trust.

4. ——: ——: HOW AVOIDED. But a conveyance of real estate to a
national bank, if accepted by it, is good against third persons and
strangers, is not void, and can not be set aside in a suit by the grant-
or's heir, but is voidable only at the instance of the State.

5. **Deed:** DELIVERY. A deed is not executed until delivered to the
grantee, or to some person or corporation for him.

6. ——: ACCEPTANCE: EVIDENCE. A conveyance by a bank to other
persons is evidence of its acceptance of the deed from its grantor.

7. ——: ——: BY CASHIER. Acceptance of a deed by the cashier of
a bank is an acceptance by the bank.

8. ——: BY VICE-PRESIDENT. A deed signed by the vice-president of
a corporation and sealed with its corporate seal, is *prima facie* valid.
But when it is shown that its execution was not in accordance with
the statute and with the by-laws of the corporation governing the
acts of the vice-president, the *prima facie* case is overcome and the
deed is invalid.

9. ——: TRUSTS: STATUTE OF FRAUDS. A trust may be created by a
deed although it contains no declarations of the trust, for this may
be manifested by any writing signed by the party to be charged or
by the party who is entitled to declare the trust.

10. ——: ——: CASE STATED. Kerfoot conveyed his property by warranty deed to a national bank, which had no authority to acquire the title, but which nevertheless accepted the deed. In the same letter which bore this deed was also a quitclaim deed from the bank to certain of his children, already written out, and also a letter in which he requested the bank to execute, acknowledge and return to him at once the quitclaim deed and to have the warranty deed recorded. The quitclaim deed was executed by the bank's vice-president, without authority from the directors, which, by its by-laws was necessary to its validity, and returned to Kerfoot. *Held,* that these contemporaneous transactions were a clear manifestation by Kerfoot of his intention that the bank should take and hold the title to the property in trust, to be deeded by it to the grantees named in the quitclaim deed, and were sufficient to take the transaction out of the statute of frauds.

*Appeal from Grundy Circuit Court.*—HON. PARIS C. STEPP, Judge.

AFFIRMED.

*George Hall & Son* and *Millard Patterson* for appellants.

(1) Before the deed from James H. Kerfoot to the First National Bank could take effect or pass the title to the bank, it, by its legally authorized agent, must accept the same, and there is no evidence that R. M. Cook had authority to accept this deed or that it was accepted. *Ebersole v. Rankin,* 102 Mo. 488; *Brandon v. Carter,* 119 Mo. 572; *Cravens v. Rossiter,* 116 Mo. 338; *Roberts v. Moseley,* 51 Mo. 282; *Rogers v. Carey,* 47 Mo. 232; *Renfro v. Harrison,* 10 Mo. 412; *Armstrong v. Morrill,* 81 U. S. 120; *United States v. Bank,* 21 How. 356; *Morse v. Bank,* 1 Holmes, 209; *Bank of United States v. Dunn,* 6 Pet. 51; Morse on Banks and Banking, 152; 4 Thompson on Corp., secs. 4754, 4761, 4951; *Bank v. Armstrong,* 152 U. S. 346; *Matthews v. Skinker,* 62 Mo. 329. And said bank could not, under the laws of the United States or of

the State of Missouri, receive, hold or convey said real estate for that purpose. U. S. National Banking Act, secs. 5136 and 5137; R. S. 1889, sec. 2508; Laws of 1893, p. 128; *Blair v. Perpetual Ins. Co.*, 10 Mo. 560. (2) There was no legal delivery of either the deed from J. H. Kerfoot to the First National Bank or the pretended deed from the bank to defendants Hervey, Alwilda and Lester R. Kerfoot. *Cravens v. Rossiter*, 116 Mo. 338; *White v. Pollock*, 117 Mo. 467; *Sneathen v. Sneathen*, 104 Mo. 201; *Standiford v. Standiford*, 97 Mo. 231; *Tobin v. Bass*, 85 Mo. 654; *Huey v. Huey*, 65 Mo. 689; *Turner v. Carpenter*, 83 Mo. 333; *Hammerslough v. Cheatham*, 84 Mo. 13; *Tyler v. Hall*, 106 Mo. 313; *Hall v. Hall*, 107 Mo. 101. (3) The deed made by C. H. Cook, as vice-president of the First National Bank, to defendants, Hervey, Alwilda and Lester R. Kerfoot, was unauthorized by the board of directors of the bank and was void. *Burris v. Bank*, 70 Mo. App. 675; *Winsor v. Bank*, 18 Mo. App. 665; *McKeag v. Collins*, 87 Mo. 164; *Luse v. Railroad*, 25 Am. Rep. 506; *Fleckner v. President*, 8 Wheat. 338; *Bank v. Dandridge*, 12 Wheat. 64. (4) The attempted conveyance not having been completed in the lifetime of James H. Kerfoot, his death revoked all that had been done toward the conveyance, and the property reverted to his legal heirs. 8 Am. and Eng. Ency. of Law, 1313; *Tomlinson v. Ellison*, 104 Mo. 105; *Helfenstein's Estate*, 18 Am. Rep. 449; *Richardson v. Hadsall*, 106 Ill. 476; *Lambert v. Overton*, 13 W. Rep. 227; *Appeal of Walsh*, 122 Pa. St. 177; *Thweatt v. McCullough*, 5 Am. St. Rep. 391.

*Thomas J. Beall* and *Harber & Knight* for respondents.

(1) Dr. Kerfoot, if living, could not be heard to question the power or authority of the bank to receive

the deed made by him to it, or. the authority of the bank to make the conveyance back to his children, as requested by him, or the authority of C. H. Cook, as vice-president, to execute the same. And this appellant occupies, to say the least, no more favorable position in regard to those questions than would Dr. Kerfoot if living. *Broadwell v. Merritt*, 87 Mo. 95; *Bank v. Matthews*, 8 Otto. 621; *Wherry v. Hale*, 77 Mo. 20; *Ins. Co. v. Smith*, 117 Mo. 261; *Reynolds v. Bank*, 112 U. S. 405; *Bank v. Flathers*, 45 La. Ann. 75; *Bond v. Tennell Mfg. Co.*, 82 Tex. 310; 7 Am. and Eng. Ency. of Law, 29; *Weiss v. Heitkamp*, 127 Mo. 23; Herman on Estoppel, sec. 573, p. 577; 1 Morse on Banking, [3 Ed.], sec. 75; Perry on Trusts [4 Ed.], sec. 45; *Bob v. Bob*, 89 Mo. 411; *Henderson v. Henderson*, 13 Mo. 107. (2) The delivery by Dr. Kerfoot to Capt. Beall of the deed made by the bank at Dr. Kerfoot's instance and request, to his children, was a good delivery thereof and vested title to the lands therein mentioned, and in question here, to said children. Neither Dr. Kerfoot nor anyone in privity with him, his administrator, his grandson, nor even the next friend of his grandson, can be heard to assert the invalidity of such deed. *Jackson v. Powell*, 87 Ala. 685; *Caldwell v. Head*, 17 Mo. 561; *St. Louis Public Schools v. Risley*, 28 Mo. 415; *Standiford v. Standiford*, 97 Mo. 231; *White v. Pollock*, 117 Mo. 467; *Huey v. Huey*, 65 Mo. 698; *Deddiwillder v. Smith*, 40 N. E. Rep. 748. (3) Neither the administrator of Dr. Kerfoot nor the alleged next friend of his grandson could jointly or otherwise maintain a suit in ejectment and to set aside a deed made and recognized by Dr. Kerfoot himself. *Thorp v. Miller*, 38 S. W. Rep. 929; *Burdyne v. Mackey*, 7 Mo. 374; *Dillinger v. Kelley*, 84 Mo. 561. (4) While the trust, in this case, reposed in the bank by Dr. Kerfoot was fully executed by the bank and neither Dr. Ker-

foot, were he living, his heirs or administrators, or other person, he being dead, can question the right of the bank to receive and execute such trust, yet if such trust were to this day unexecuted and it was held said bank had no authority to receive said conveyance and could not be compelled to execute the trust, this would avail plaintiff nothing because the court would appoint a competent trustee to execute same, but the trust, as we have said, being fully executed and in the exact manner designated by Dr. Kerfoot, his heirs can not now find fault therewith. Perry on Trusts [4 Ed.], sec. 45.

BURGESS, J.—This is an action by Homer Hall, administrator of the estate of J. H. Kerfoot, deceased, and Robert Earl Kerfoot, who sues by his next friend Homer Hall, to set aside a deed made by said J. H. Kerfoot on October 28, 1891, to the First National Bank of Trenton, Missouri, and a deed from said bank to the defendants Hervey Kerfoot, Lester R. Kerfoot and Alwilda Kerfoot dated October 9, 1893, by which was conveyed to said bank, and by it to said Hervey, Lester R. and Alwilda Kerfoot part of lot 6 in block 29 in Trenton, Grundy county, Missouri, and to recover the possession of said land. The petition is in two counts, one in equity, the other in ejectment.

Defendants recovered judgment in the court below, from which plaintiffs appealed.

James H. Kerfoot died at El Paso, Texas, on February 4, 1894, where at the time of his death and for several years prior thereto he resided with the defendant Mona Kerfoot as his wife, and their children, Hervey, Lester R. and Alwilda Kerfoot, who are defendants in this suit. He was never legally married to Mona Kerfoot, but for several years before his death he recognized her as his wife, introduced her as such

and always recognized the children as his. Their oldest child was born during the lifetime of Kerfoot's first wife who died at Trenton, Missouri, in the spring of 1886. By his first wife he had several children all of whom died before their father, without issue, except his son Robert H. Kerfoot. While Robert H. Kerfoot died before his father, he left as his only heir his son Robert Earl Kerfoot, one of the plaintiffs in this suit.

On the twenty-eighth day of October, 1891, James H. Kerfoot, owned and was in possession of the lot in question, and on that day under an arrangement with R. M. Cook, cashier of the first National Bank of Trenton (a bank duly incorporated under the act of Congress), by which the lot was to be conveyed to the bank, and the title held by it, and to be thereafter conveyed to such persons as might be requested by said Kerfoot, Kerfoot conveyed to the bank by warranty deed the lot in question for the expressed consideration of $1,400 and thereafter to wit, on the ninth day of October, 1893, said bank by C. H. Cook, its vice-president, conveyed by quitclaim deed the lot to the defendants Hervey, Alwilda and Lester R. Kerfoot. The other officers of the bank knew nothing about the arrangement between R. M. Cook and J. H. Kerfoot. This last named deed was delivered by J. H. Kerfoot to the defendant Beall for the grantees therein named before his death. At the time of the commencement of this suit the Farmers and Merchants Bank was in possession of the lot in question as tenants of the grantees in the deed from the bank by Cook, of whom the defendant Patton is curator.

An administrator as such has only such powers over the real estate of his decedent as are conferred upon him by section 129, article VII, Revised Statutes 1889. Under the provisions of that section, he may

rent the land of the deceased, where the probate court shall so order of record, in order to the payment of debts, and also order that the administrator take possession of such land, in which event he is authorized by that section to maintain an action for the recovery of the possession of the land. But in the absence of such action by the probate court the administrator has no control whatever of the land of his intestate. *Thorp v. Miller*, 137 Mo. 231. At the death of a person owning land the title descends to his heirs or devisees, and his personal representatives take no interest therein except a naked power to sell it for the payment of his debts. The possession of the land as well as the defense of the title belong to the heirs or devisees and to no other person. The administrator has nothing whatever to do with it. *Chambers' Adm'r v. Wright's Heirs*, 40 Mo. 482. He can not maintain ejectment for the possession of the land, nor can he maintain a suit to remove a cloud from the title thereto in the absence of an order of the probate court as before stated. There was therefore no error, in the judgment of the trial court in so far as the administrator is concerned.

But it is contended by plaintiff, Robert E. Kerfoot, that the deed from James H. Kerfoot to the First National Bank conveyed no interest in the lot involved in this litigation and described in said deed, for the reason that the bank had no authority to accept it. Upon the other hand it is insisted by defendants that it is well settled that national banks have power to deal in real estate for certain purposes, and that if a bank accepts a deed to land, even under circumstances such as would make the act clearly *ultra vires*, or in violation of its charter, and although the government could object, still the deed would be good between the parties.

By section 5137, United States Revised Statutes, page 999, it is provided that "a national banking association may purchase, hold and convey real estate for the following purposes, and for no other: *First,* such as shall be necessary for its immediate accommodation in the transaction of its business; *second,* such as shall be mortgaged to it in good faith by way of security for debts previously contracted; *third,* such as shall be conveyed to it in satisfaction of debts previously contracted in the course of its dealings; *fourth,* such as it shall purchase at sales under judgments, decrees or mortgages held by the association, or shall purchase to secure debts due to it." National banks have no power to acquire and hold title to real estate except for the purposes expressed in or necessarily implied from their charters, and the power to acquire and hold title to real estate in trust, merely, is not among the expressed powers, nor is it implied from the language used. But having express power to accept title to real estate for certain purposes named in its charter does not imply that a deed to real estate for a moneyed consideration therein expressed, even though no consideration passed, is absolutely void.

"If a corporation takes land by grant, which by its charter it can not hold, its title is good against third persons and strangers; the State can only interfere." 1 Perry on Trusts [4 Ed.], sec. 45. In *National Bank v. Matthews,* 98 U. S. *loc, cit.* 628, it is said: "Where a corporation is incompetent by its charter to take a title to real estate, a conveyance to it is not void, but only voidable, and the sovereign alone can object. It is valid until assailed in a direct proceeding instituted for that purpose." The same rule is announced in *Leazure v. Hillegas,* 7 Serg. & R. (Pa.) 313; *Goundie v. Northampton Water Co.,* 7 Pa. St. 233; *Runyan v. Coster,* 14 Pet. 122; *The Banks v. Poitiaux,* 3 Rand.

(Va.) 136; *McIndoe v. The City of St. Louis*, 10 Mo. 575, and *Gold Mining Company v. National Bank*, 96 U. S. 640.

If then the deed to the bank was accepted by it, it follows that the title to the lot passed to and vested in it, and that the plaintiff Kerfoot can not question it.

It is, however, said by plaintiff that the deed was never accepted by the bank, and for that reason never became operative. Before a deed to land can be said to be executed it must be delivered to the grantee therein named, or to some person or corporation for him. Delivery is absolutely necessary, and is one of the essentials and conditions precedent to the execution of a valid deed.

R. M. Cook, cashier of the First National Bank, was the agent of the bank in its general routine business, and accepted the deed as and for the bank, and by the direction of the grantor had it placed upon record. The bank afterwards undertook by its vice-president to convey by deed the lot to the defendants, Hervey, Alwilda and Lester R. Kerfoot, and it is idle to say that it has not accepted the deed from J. H. Kerfoot, when the very fact of its execution of a deed to the property contradicts any such supposition.

It was not necessary in order to an acceptance of the deed that the board of directors of the bank should have been called together, and then by resolution of the board accept it. Its acceptance by the cashier must be held to be the acceptance by the bank.

The next question for consideration is with respect to the validity of the quitclaim deed from the First National Bank by C. H. Cook, its vice-president, to the defendants, Hervey, Alwilda and Lester R. Kerfoot. This depends altogether upon the power of the vice-president of the bank to execute the deed. The powers of a corporation are such as are expressly con-

ferred upon it by the act under which it is created, and such implied powers as may reasonably and logically flow therefrom. And having the power to acquire title to real estate by deed it has the implied power to convey it by deed, and by its board of directors to make by-laws prescribing the mode by which it may be done, provided always that it be in accordance with the statutes of the State. By section 2399, Revised Statutes 1889, it is provided that "any private corporation authorized to hold real estate may convey the same by deed, sealed with the common seal of such corporation and signed by the president or presiding member or trustee thereof."

The deed in question was signed "The First National Bank of Trenton, Missouri, by C. H. Cook, vice-president," to which the seal of the bank was affixed and acknowledged by Cook, "Vice-President," for the bank before a notary public. The evidence showed that the directors of the bank had nothing in any manner to do with the making of this deed, and that they knew nothing about it; that the making of the deed to the bank, and the execution of the quitclaim deed now under consideration to the grantees therein named by the bank by its vice-president, was in accordance with a private arrangement made between J. H. Kerfoot, R. M. Cook and C. H. Cook. The by-laws of the corporation provide that the vice-president of the bank may act in the absence of the president, but he can only do so by order of the board of directors and while in this case the deed was executed in the absence of the president of the bank, there was no order of the board authorizing its execution by the vice-president. As the deed was signed by the vice-president of the bank and sealed with its corporate seal it was *prima facie* valid, (*Leggett v. N. J. M. & B. Co.*, 1 Saxton's Ch. 541; *St. Louis*

*Public Schools v. Risley*, 28 Mo. 415), but when it was shown that its execution was without authority from the board of directors, and not in accordance with the statute, that *prima facie* case was overcome, and the deed shown to be invalid, and insufficient to pass title. *McKeag v. Collins*, 87 Mo. 164.

This deed being invalid it becomes unnecessary to pass upon the question of its delivery.

The quitclaim deed being invalid, and insufficient to pass title to the grantees therein named, the legal title to the lot is vested in the First National Bank, and the question is whether or not it holds the title in trust for them. The evidence is conclusive that in pursuance of an arrangement between R. M. Cook, cashier of the bank, and J. H. Kerfoot, the property was conveyed to the bank by Kerfoot, the title to be held by it and reconveyed to him or to such persons as he might designate; and that thereafter, at El Paso, Texas, where he then resided, on the twenty-sixth day of October, 1893, he executed a warranty deed to the bank for the lot, and at the same time had prepared a quitclaim deed therefor from the bank to Hervey, Alwilda and Lester R. Kerfoot, and inclosed them both in the same envelope addressed to "R. M. Cook, Cashier, Trenton, Missouri." In the same envelope was inclosed a letter from Kerfoot to R. M. Cook which is as follows:

"Dear Sir:—Inclosed please find two deeds, one to the bank, the other to parties therein named. Please have the quitclaim deed acknowledged by notary public whom you can trust to be confidential. Then return said deed to me by mail in inclosed envelope. Upon receipt of said quitclaim deed I will wire you. Have my deed to First National Bank recorded and expense on me for recording. I shall not have the quitclaim deed recorded at present. In case I should

wish to convey the property at any time I would sur-
render the quitclaim deed and have bank make a new
one to whom I might direct.   Please allow the impres-
sion to go forth that the bank is the owner.   When
you record deed, call on G. L. Winters and have my
insurance made payable to the First National Bank.
By doing as above requested you will greatly oblige
me and I can not see that it could in any way discom-
mode the bank.   If so I would not ask it.   Please have
deed signed and acknowledged as soon as you get it
and return at once.   I believe your by-laws permit the
vice-president to act in the absence of the president.
And attest by yourself, as cashier with the bank seal
thereon.''

The evidence also showed that R. M. Cook had
the deed to the bank recorded at the expense of Ker-
foot and that it has ever since retained the same, and
in compliance with Kerfoot's request contained in said
letter C. H. Cook, vice-president of the bank, executed
the quitclaim deed and returned it by mail to Kerfoot
at El Paso, Texas.   It thus seems clear that the bank
holds the title to lot in trust for the persons named in
the quitclaim deed, and that it has by its cashier and
vice-president, by accepting the warranty deed and
having it recorded, and by attempting to reconvey the
lot by the quitclaim deed to the parties therein named,
recognized the trust in which it holds title to the lot,
which it may at any time convey to the *cestuis que
trust* without in any way interfering with the supposed
rights of any other person.

But there was no declaration or creation of trust
in the deed to the bank, and it may be said that it
could not be created in any other way because of the
statute of frauds.   Section 5184, Revised Statutes 1889,
provides that ''all declarations or creations of trust
or confidence of any lands, tenements or hereditaments

shall be manifested and proved by some writing signed by the party who is, or shall be, by law enabled to declare such trusts, or by his last 'will, in writing, or else they shall be void.'' But this contention can not be maintained, as "it is not necessary that the deed or instrument in which the estate which is to be affected by the trust is granted should also contain the declaration of the trusts upon which the property is to be held; but the trust may be manifested by any writing signed by the party to be charged, or by the party who is entitled to declare the trust.'' 1 Beach on Modern Equity Jurisprudence, sec. 150.

Contemporaneously with and as a part of the same transaction, J. H. Kerfoot wrote and inclosed in the same envelope with the warranty deed to the bank, a quitclaim deed from the bank to the defendants, Hervey, Alwilda and Lester R. Kerfoot to the same property, to be executed by the bank, and the letter of October 26, 1893, addressed to R. M. Cook, cashier, in which he requested that the quitclaim deed be signed and acknowledged as soon as it could be done and returned to him at once, which was a clear manifestation by him of an intention that the bank should take and hold the title to the property in trust, to be deeded by it to the grantees named in the deed, and sufficient to take the transaction out of the statute quoted.

The conclusion reached necessarily results in an affirmance of the judgment regardless of the question as to the competency of Mona Kerfoot as a witness. Therefore we do not pass upon that and other questions which could not affect the result.

The judgment is affirmed. GANTT, P. J., and SHERWOOD, J., concur.