IN THE MATTER OF THE ESTATE OF MARY STROM, Deceased, Respondent, v. JOSEPH M. STROM, Appellant.

St. Louis Court of Appeals, December 15, 1908.

1. **APPELLATE PRACTICE: Jurisdiction.** Where an appeal was taken from a ruling of the probate court on a motion to revoke an order of that court directing the executor of an estate to take charge of real estate and apply the rents in payment of the debts of the deceased, and afterwards an appeal was taken from the judgment of the circuit court on the same matter, the court of appeals and not the Supreme Court had jurisdiction of such appeal. The fact that the party filing the motion claimed an interest in the real estate in question and alleged that the order which he sought to set aside was made without notice to him, did not make the proceeding involve title to real estate so as to give the Supreme Court jurisdiction; the probate court had no jurisdiction to determine the mover's right to the property.

2. **PRACTICE: Constitutional Rights: Appeal from Probate Court.** On an appeal from a judgment of the probate court, the circuit court could not consider a constitutional question which was not raised on the trial in the probate court.

3. **CONSTITUTIONAL RIGHT: Due Process of Law: Common Law.** Without constitutional guaranties, under the common law, a citizen can not be deprived of his property without due process of law; he will not be bound by a judgment of the court in a proceeding of which he had no notice.

4. ———: ———: **Probate Courts.** Where a probate court made an order directing the executor of an estate to take charge of the real estate of the deceased, collect the rents and apply them on the payment of the debts of the estate, such order did not

affect the rights of the surviving husband of the testatrix who claimed a curtesy in the real estate; such order as to him was a nullity because the probate court had no jurisdiction to pass upon and determine his rights; while such order would be binding upon the heirs, it would not be binding upon one claiming by title paramount to the heirs.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse A. McDonald,* Judge.

AFFIRMED.

*Charles B. Stark* and *Christian F. Schneider* for appellant.

(1) The curtesy estate of the husband was defined at common law to be "a freehold estate for the term of his natural life." 1 Wasb. Real Prop. (6 Ed.), sec. 313, p. 145; sec. 316, p. 145; Coke upon Lit., chap. 4, sec. 35; 2 Black, Com., 126; 1 Woerner, Adm. (2 Ed.), sec. 121, p. 296. (2) The estate by the curtesy is recognized also by the Revised Statutes 1899, and established by the decisions of this court. R. S. 1899, secs. 111, 4603; Reaume v. Chambers, 22 Mo. 36; Tremmel v. Kleibolt, 75 Mo. 255; McBreen v. McBreen, 154 Mo. 323; Miller v. Quick, 158 Mo. 495; Casler v. Gray, 159 Mo. 588; Hall v. French, 165 Mo. 430; Doyle v. Rolwing, 165 Mo. 231; Kennedy v. Koopmann, 166 Mo. 87. (3) Upon the decease of the owner, real estate in Missouri passes *ipso facto* to the heir, direct, and not through the personal representative. So does curtesy. Neither can be deprived of his property without notice. Thorp v. Miller, 137 Mo. 239; R. S. 1899, sec. 130; Aubochon v. Lory, 23 Mo. 99; Woerner on Adm'n, secs. 276, 279, 338; Hunt v. Searcy, 167 Mo. 178.

*Ernest C. Dodge* for respondent.

(1) The Probate Court has authority to sell, lease or rent real estate of deceased persons, to pay debts

upon proper petition being filed.  R. S. 1899, sec. 130; R. S. 1899, sec. 146; Woerner, Am. Law of Admstr., Vol. 2, sec. 338, p. 715; Vol. 2, sec. 464, p. 1023; Priest v. Spier, 96 Mo. 111; Thorp v. Miller, 137 Mo. 231-239; Hall v. Bank, 145 Mo. 418.  (2)  Probate court has no jurisdiction to try opposing claims.  Cauley v. Truitt, 63 Mo. App. 356; Johnson v. Jones, 47 Mo. App. 226-241.  (3)  Appellant is estopped from claiming an estate by curtesy.  Doyle v. Rolwing, 165 Mo. 231.  (4) Appellant cannot recover land except by proceeding under the statute.  Sec. 3053.

GOODE, J.—Mary Strom, deceased, and Joseph Strom, the appellant, were married in 1888 and had one child, a daughter, Florence, who is still living. On May 10, 1897, Mary Williams conveyed by an ordinary warranty deed to Mary Strom and Joseph Strom, husband and wife, a dwelling-house and lot in St. Louis, to-wit, No. 2708 Thomas street.  In September, 1900, the Stroms separated and never thereafter lived together, though they were not divorced.  Mrs. Strom brought an action for divorce and her husband filed a cross-bill, but both were dismissed by the court at the hearing.  Afterwards Joseph Strom instituted a suit for divorce, which was likewise dismissed.  Strom conducted a grocery store, and in arranging as to the pecuniary affairs of the family while the proceedings for divorce were pending or threatened, he and his wife entered into an agreement under date of September 28, 1901, by which he sold and relinquished to her for the sum of $800, all his right, title and interest in and to. the aforesaid lot, and also his stock of merchandise, subject to an incumbrance of $300.  The contract recited that whereas the interest of Joseph Strom in the property was far in excess of eight hundred dollars, his wife Mary, in consideration of the transfer of the property, acknowledged the same to be in full satisfac-

tion of any and all claims she might have against her husband, especially in full satisfaction of any claim for alimony or suit money. To carry out said agreement, Joseph Strom and Mary Strom, on September 28, 1901, conveyed the lot aforesaid on Thomas street by general warranty deed to James B. Austin. It was understood Austin was to place a deed of trust on the property for a loan of $1,200, out of which eight hundred dollars was to be paid to Strom and one hundred dollars deposited for the benefit of their daughter Florence, as had been agreed in the settlement between the husband and wife; and we suppose the remainder of three hundred dollars was to be used in paying the indebtedness of Strom's mercantile establishment which Mrs. Strom had assumed. After the execution of the deed of trust, James B. Austin reconveyed the property by a general warranty deed to Mrs. Strom, with the usual habendum clause, *i. e.*:

"To have and to hold the premises aforesaid, with all and singular the rights and privileges, appurtenances, immunities and improvements thereto belonging, or in any wise appertaining unto the said party of the second part, and unto her heirs and assigns forever; the said James B. Austin hereby covenanting that he will warrant and defend the title to the said premises unto the said party of the second part and unto her heirs and assigns forever, against the lawful claims and demands of all persons whomsoever, except as to first deed of trust for $1,200, dated September 28th, 1901.

"In Witness Whereof the said party of the first part has hereunto set his hand and seal the day and year first above written.

(Seal)

Signed, sealed and delivered in the presence of us:

"JAMES B. AUSTIN,
"ERNEST C. DODGE."

Mrs. Strom died in 1903, leaving a last will by which she devised her property, including the lot in question, to a trustee for the benefit of her daughter. William Porth was named as executor of her will, and also as trustee. The Thomas street property was inventoried as part of the estate. Debts of the decedent to the amount of $2,300 or $2,400 were proved, and on December 7, 1903, the executor Porth filed a motion in the probate court asking that the rent ($22 a month) for the house and lot on Thomas street, be turned over to the executor as part of the assets of Mrs. Strom's estate, and he be allowed to collect the rent, as it was needed to pay debts of the estate. The motion stated the executor had been informed Strom had notified the tenant of the property not to pay rent to the executor because he (Strom) as tenant by the curtesy was entitled to the rent. Without having Strom notified, the court made an order in accordance with this motion, directing the executor, however, to keep the rent of said property separate from the other assets of Mrs. Strom's estate. At the same term of the probate court and on December 17th, Strom appeared and filed a motion to have the order vacated as opposed to law and as having been improvidently made without notifying him. The motion stated Strom and Mary Strom were husband and wife at the time of her death, and that one child born of the marriage was still living; that deceased was the owner and seized in fee of the real estate in controversy at the time of her death, and by reason of the facts stated, the mover Joseph Strom, had an estate by curtesy in the property and was entitled to the rents and profits, which did not constitute assets of the estate of the deceased, or become subject to the payment of her debts. The probate court overruled the motion and an appeal was taken to the circuit court. At the hearing in the circuit court the executor

again prevailed; whereupon an appeal was prosecuted to the Supreme Court, which court transferred it here.

The circuit court refused to declare Strom was tenant by the curtesy of the premises in question, or that the deed of Austin to Mary Strom, dated September 29, 1902, vested the title to the lot in her, subject to an estate by the curtesy in her husband; or that the instruments, agreements and deed of trust offered in evidence, and relating to the transactions between Strom and his wife at the time of the separation, on a true interpretation, contained no covenant or agreement which estopped Strom from claiming his curtesy in the property in controversy; but the said papers and transactions were intended to settle the question of suit money and alimony in the divorce proceeding then in contemplation, and not to waive Strom's curtesy; refused also to declare the order of the probate court directing the executor to take charge of the property on Thomas street and collect the rents, of which order Strom had no notice, violated section 30, article II of the Constitution of the State, which provides that no person shall be deprived of life, liberty or property without due process of law, and also violated the Federal Constitution to the same effect.

In considering the question of where jurisdiction of this appeal lay, the Supreme Court held the matter disposed of in the probate court was merely a motion to have revoked a previous order directing the executor to take charge of the real estate in dispute and apply the rents accruing therefrom, to the payment of the debts of the deceased, and that the title to the property had to be noticed only incidentally in disposing of the motion. The opinion declared probate courts have no jurisdiction to determine the title to real estate, either in an equity suit or an action in ejectment; or to determine the liability of an executor for rents of the decedent's realty which are claimed by a third party; but

that suits for these purposes must be tried in the circuit court. Therefore it was held the probate court, in dealing with this matter, could not pass on appellant's right to an estate by the curtesy in the lot in question; that if his motion had prayed for a judgment as to the right of curtesy, the probate court would have had absolutely no jurisdiction to settle the right; and that title to real estate was not involved and could not possibly have been affected by the judgment of the probate court. With this question determind by the tribunal of last resort, the point left for decision is whether or not the order of the probate court for the executor to collect the rents of the Thomas street property for the purpose of paying demands against the estate, is invalid against a direct attack made on the ground of lack of notice to appellant of the application for said order, in view of the statement in the application that appellant had notified the tenant of the premises not to pay rent to the executor, as appellant was entitled to collect the rent by virtue of his curtesy. The opinion of the Supreme Court answers this inquiry in its constitutional phase, and as far as it involves the contention that the State and National Constitutions were violated by the order, in that it deprived appellant of his property without due process of law. The opinion says these constitutional guaranties were not invoked until the cause reached the circuit court and could not be invoked effectively at that stage of the proceeding, because, to pass on them, the circuit court would exercise a larger jurisdiction than the court of first instance had been asked to exercise.

By the common law and without constitutional guaranties, a citizen is protected against deprivation of his property without due process in law; that is to say, it can only be taken from him in proceedings conforming to the law of the land; a phrase equivalent to due process of law. [Hunt v. Searcy, 167 Mo. 158, 179.]

That State and Federal Constitutions are, in this re-
gard, declaratory of the common law, was decided in
Hennig v. Staed, 138 Mo. 430, 434. It is of the essence
of due process that a party who will be deprived of
property by the judgment of a court, or one whose en-
joyment of his property will be impaired, shall be noti-
fied of the proceeding and given an opportunity to be
heard. [Cases supra; State v. Loomis, 115 Mo. 307;
Roth v. Gabbert, 123 Mo. 21; Scott v. McNeal, 154
U. S. 34.] The executor's motion informed the pro-
bate court appellant had notified the tenant not to pay
rent to the executor, as appellant was entitled to it by
his curtesy, and this averment in the motion is the im-
portant fact. The appeal record does not set forth the
order in terms, but says the executor's motion was
sustained. Said motion clearly invoked a decision of
the right as between the executor and appellant; and a
mass of evidence about the transactions in settlement
of the divorce cases was received in the circuit court
in proof of the contention that appellant was estopped
by said transactions to claim his curtesy, and said court
refused to declare he was not estopped—a matter which,
according to the Supreme Court's opinion, could not be
determined. But in view of the contents of the applica-
tion, appellant was entitled to notice of it, if he had an
interest in the rents of which he would be deprived by
granting the application. We have the opinion of the
Supreme Court that his alleged title to the lot could
not be affected by the order; and as the rent issued out
of the realty, his right to the rent could not be lost.
Granting the order attempted to pass on the question
of the executor's right to the rent as against appellant's,
if it was void on the face of the proceedings in this re-
gard, it did not cloud appellant's title, much less impair
his rights, but was a nullity as to him, and the omission
to give notice worked no injury. Equity would not in-
terfere under such circumstances (Peak v. Laughlin,

40 Mo. 162; Rodgers v. Bank, 82 Mo. App. 377) ; and we know no principle on which appellant's motion to revoke would. have a better standing. The statute says no administrator or executor, except an executor acting under a testamentary power, or under an exception irrelevant to the present case, shall rent or control the real estate of a decedent, unless the probate court is satisfied it is necessary to rent the real estate for the payment of debts, and makes an order of record requiring the executor or administrator to take possession and rent it for a period not exceeding two years; in which case the executor or administrator may maintain any action for its recovery the decedent could have maintained in his lifetime. [1 Mo. Ann. Stat. 1899, sec. 130.] Unless such an order is made, the lands and rents belong to the heirs of the deceased, but subject to the payment of his debts. [Hall v. Bank, 145 Mo. 418; Bealey v. Blake's Admr., 70 Mo. App. 229.] The statute was enacted to provide a mode in which, in the course of administration, an executor or administrator may obtain the rents, as against the heirs, if needed to pay debts. Likely the decision of the probate court concerning the necessity, is binding on an heir as to rents accruing subsequent to the decision, subject to the right of appeal. But its decision is not binding on a person who claims land and rent, not as heir of the decedent, but by title paramount to the heir, and it was not intended the probate court should have jurisdiction to pass on such extraneous demands. [Johnson v. Jones, 47 Mo. App. 237; Cauley v. Truitt, 62 Mo. App. 356; Riggs v. Sterling, 51 Mich. 157.] The cases just cited are not directly in point, but are relevant by analogy. In the first one the plaintiff as legatee, intervened on an order for distribution of the estate. It appeared the plaintiff, though named as a distributee in the order, had not been paid her legacy by the executor. Instead he had filed a receipt signed by another

person, together with a written assignment by plaintiff of her legacy to said other person. The plaintiff claimed the assignment had been procured by fraud and was voidable. It was held that as she was included in the order of distribution, the executor could not refuse to pay her, and *prima facie* she was entitled to an execution; but if facts existed which would put the executor in jeopardy, he might have her share impounded until the question of who owned the legacy was determined by a competent tribunal. It was further said the probate court had no power to investigate the validity of assignments of interests by heirs, nor to adjudicate on collateral questions, but the claims of third persons against heirs, creditors, legatees or distributees, must be tried in courts of general jurisdiction when an adjudication is necessary, unless the power to try them has been conferred expressly on the probate court; citing Woerner, Adm. Law, sec. 151, and Knowlton v. Johnson, 46 Maine 486. In Cauley v. Fruitt the plaintiff, as widow of a decedent, applied for an order that the administrator of the estate pay her a sum of money as her dower interest in the personalty. The administrator answered she had released in writing, her right of dower and a year's support in the estate, except what remained after the payment of debts. She alleged fraud in procuring the release. The defense of the administrator was held untenable, because the probate court did not have jurisdiction to try the validity of the release. The opinion declared said court was without power to enter into and adjudicate questions belonging to the administration of justice between contending litigants, though these questions were brought forward in connection with the distribution of estates. In Riggs v. Sterling certain real property had been sold under execution and a deed made to the plaintiff, who instituted a summary proceeding under the Michigan statute before a commissioner to recover possession. Judgment

was given for the defendant in the circuit court to which the case was first appealed. The real issue was upon the existence of a homestead right asserted by the defendants and paramount to the title plaintiff acquired at the execution sale. In the Supreme Court it was decided this homestead right could not be considered; because, in the summary proceeding provided by the statute, no question of title could be determined; and it was further held that when the commissioner discovered the contest was really one concerning the validity of the homestead right, the cause should have been dismissed and the parties remitted to other and proper methods—an action of ejectment by the plaintiff, or a bill in equity by the defendants against the sale. In Jackson v. Sheffield, 107 Ala. 358, a petition had been filed in the probate court to have a homestead allotted in the lands of the petitioner's deceased husband. The court appointed commissioners to set out the homestead, who reported; whereupon the plaintiff filed exceptions to the allotment on the ground he was a judgment creditor of the estate and a homestead could not be assigned in property affected by a judgment lien, as was the property set apart for the petitioner. It was held the probate court had no jurisdiction to ascertain whether or not the land was worth more than the judgment debt, and as the widow could not be deprived of her homestead unless it was, she was entitled *prima facie* to the allotment. Those decisions point to the conclusion that special statutory powers conferred on probate courts, or other inferior tribunals, are construed strictly, and exercises of jurisdiction beyond what the statute confers, treated as void. In the present case the court had power, and it was its duty, to order the executor to collect the rent, so far as the question between him and the heir was concerned; or rather between him as executor and himself as testamentary trustee; for this property and the rest of the estate had been devised to him

in trust for the daughter, to collect the profits and pay them to her until she was twenty-seven years old. Hence, in this case, Porth as trustee, stands in the place of the heir as regards the realty and rents; and the effect of the probate court's order was to authorize him to collect the rents, not as trustee, as otherwise he would, but as executor needing them to pay claims against the estate. Even when the right to rent is contested by a claimant under an extraneous title, the probate court can order the executor to collect; not to conclude the claimant, but to empower the executor instead of the heir, to contest with him; for in such case the executor can have any remedy the decedent would have enjoyed, and if the outside claim is found invalid by a competent tribunal, the executor will then have the rent to pay debts; whereas, otherwise the heirs would contest with the claimant and collect the rents if they prevailed. [Thorp v. Miller, 137 Mo. 231; Hall v. Bank, 145 Mo. 418; Brent v. Chipley, 104 Mo. App. 645.] So far as the present order empowered Porth to take action as executor about the rent, it was valid, but if it undertook to pass on the right to the rent as against appellant, it was, in that respect, void, because of lack of jurisdiction in the court over that part of the subject-matter of the motion—a fact which would have left an order void as against appellant if he had been notified and had appeared; for consent will not confer jurisdiction of the subject-matter. [Stone v. Corbett, 20 Mo. 350; Cones v. Ward, 47 Mo. 289.] If this view is sound, the executor was accorded authority to proceed against the tenant for the rent, but appellant was deprived of no right to proceed for it and hence was not prejudiced by the order.

Another reason for our conclusion is this: if granted a hearing, appellant could only ask that the order be so entered in favor of the executor as to make it apparent the statement in the application about his curtesy,

was treated by the court as surplusage and irrelevant. He would have no right to contend against an order empowering Porth to proceed for the rent as executor and not as trustee.

The judgment is affirmed. All concur.