TITLE GUARANTY TRUST COMPANY v. WILLIAM SESSINGHAUS and ANTON SCHULER, Sheriff of City of St. Louis; WILLIAM SESSINGHAUS, Appellant.—28 S. W. (2d) 1001.

Division One, June 3, 1930.

*E. H. Wayman* and *H. A. Loevy* for appellant; *J. D. Johnson* of counsel.

*Wilfley, Williams, McIntyre & Nelson* for respondent.

ELLISON, C.—The defendant William Sessinghaus obtained a judgment for about $8,800 against the P. B. Mathiason Manufacturing Company, a Missouri corporation, in the St. Louis City Circuit Court, in October, 1920. The judgment remaining unpaid, some five years later, in February, 1926, he caused an execution to be issued directed to the defendant Anton Schuler as sheriff. The latter levied on the real estate in controversy in the instant case as the property of said Mathiason Company, and advertised the execution sale for April 1, 1926. The plaintiff Title Guaranty Trust Company thereupon brought this suit to enjoin the sale, claiming to be sole owner of the property as grantee of the purchaser thereof at a foreclosure sale held in March, 1921, under a deed of trust theretofore given by the Mathiason Company to it, the plaintiff, in January, 1919, before the defendant Sessinghaus had obtained his judgment.

The ultimate questions for decision are whether the deed of trust and foreclosure were valid. The court below held they were and perpetually enjoined the sale. The defendant Sessinghaus has appealed; the defendant sheriff has not. The principal contentions made by the appellant are: (1) that the foreclosure should be held invalid because the respondent failed to show the conditions of the deed of trust had been breached, and because the trustee named therein was not disinterested, but a subsidiary corporation of the respondent and under its control; (2) that the deed of trust was void, because its execution by the Mathiason Company was *ultra vires*, in that part of the consideration therefor was the purchase of certain other land hereinafter called the Mayer property which the company had no right to buy; and that if the deed of trust was not wholly void, at least an accounting should be taken and all payments made on the debt secured should be credited to the valid part of the indebtedness, which would give the Mathiason Company an equity in the real estate involved in this suit subject to sale under respondent's execution.

The evidence shows the Mathiason Company was incorporated under the laws of Missouri in August, 1896, with a full paid capital of $100,000, for the purpose of manufacturing "fertilizers, glue and any or all other kinds of products made from animal bones or other animal matter" . . . and "to rent, lease, buy, sell, hold and own

real estate [and] to make, build, buy, sell, hold and own machinery.'' The company established a factory at St. Louis on the parcels of land described in the petition, consisting of nearly one entire block, and equipped it with buildings, machinery and other equipment for carrying on its business. The title to said land and equipment was, on January 8, 1919, vested in the company free from encumbrance. On that date the respondent Title Guaranty Trust Company was the owner of certain adjoining real estate which it had acquired from the Mayer Fertilizer Company.

On December 28, 1918, the Mathiason Company negotiated a lease of its factory and equipment to Wilson & Co., for occupancy and use in the manufacture of glue and fertilizer. The lease was for a term of two years, beginning on February 15, 1919, with the right of renewal for one year, and called for a rental in the nature of a royalty of two and a half cents per pound on all finished glue manufactured by the lessee on the leased premises, the annual rental to be not less, however, than $18,700, payable $1558.33 on the 15th day of each month, beginning on March 15, 1919. The lessor obligated itself to set aside out of the annual rental the sum of $5,000 for application, at the direction of the lessee, to extensions, improvements and repairs, and to pay all taxes and other liens and the cost of insurance on the demised premises.

After the negotiation of the foregoing lease the deed of trust involved in this suit was executed, dated January 8 and acknowledged January 16, 1919, along with a chattel mortgage or deed of trust covering the machinery and other like equipment of the Mathiason Company. Both secured the payment of a note for $95,000 of even date. The note did in fact, as appellant contends, cover the purchase price of the Mayer property which was contemporaneously conveyed by or at the direction of the respondent Title Guaranty Trust Company to the Mathiason Company for a consideration of $35,000; and the Mayer property was included in the deed of trust. As a further consideration for the note and deed of trust the respondent advanced to the Mathiason company $60,376.45 in money, which amount the bank records show was paid by the latter a week later to another concern called the National Glue Company.

The principal of the $95,000 note was payable in monthly installments of not less than $500 on the first day of every month after date during the period of the aforesaid Wilson lease. On the expiration of the lease the balance then remaining was to be paid in equal monthly installments so that the whole note should be satisfied within ten years from date. The note bore interest at the rate of six per cent per annum, payable monthly from date on the entire indebtedness or so much thereof as might from time to time remain unpaid. The deed of trust authorized foreclosure on default for three consecutive months in the payment of principal

or interest as called for by the note, and conferred a power of sale in that event on the trustee, the American Trust Company. The instrument likewise contained an assignment to the trustee of all rents, issues, profits and income accruing from the property encumbered.

In harmony with this provision of the deed of trust and contemporaneously with its execution, apparently, on January ——, 1919, the Mathiason Company indorsed on its lease to Wilson & Co., with the latter's written consent, an assignment to the American Trust Company of all rents, issues, income and profits accruing to it under the lease or any extension thereof.

Also, at the same time we take it, on January 16, 1919, the Mathiason Company entered into a written contract with the American Trust Company, referring to the execution of the Wilson lease and the deed of trust, and to the fact that by the deed of trust the revenues derived under the lease were assigned to the American Trust Company as trustee. Next appears a recital as to how the annual rentals must be applied under the requirements of the two instruments, viz.: $5,000 annually to betterments; $500 per month or $6,000 per year to the principal of the note secured; interest payable monthly; taxes and insurance. The contract then sets out an agreement as to what shall be done if the rentals under the lease prove insufficient to meet the foregoing requirements and what if there is a surplus. It is enough here to say the Mathiason Company and Roy Morgan, its president, agreed to make up any deficiency.

Passing on to the issue concerning the payments made on the $95,000 note. The respondent's secretary, Mr. Gottlieb, testified as a witness for plaintiff. He identified the various instruments heretofore mentioned and said if the stipulated $500 payments had been made monthly on the principal of the note, the amount due on February 1, 1921, would have been $83,000, whereas the payments actually made during this period reduced the note only to $88,000, thereby leaving a deficiency of $5,000, representing an arrearage of ten monthly payments. This testimony is borne out by the note itself. As introduced in evidence the credits on the back show twelve $500 payments and one $1000 payment, making $7,000. If $500 had been paid on the first day of each month, beginning on February 1, 1919, and ending January 1, 1921, thus going to but not including February 1, 1921, there would have been twenty-four such payments, amounting to $12,000. It may be observed, also, the note bears no credits for interest paid.

In giving the foregoing testimony Mr. Gottlieb said he was speaking from the books of the respondent Title Guaranty Trust Company showing the condition of the loan account covering the $95,000 note, and not from a statement of rents received and disbursements

made under the Wilson lease, though there were records in respondent's office covering that account also. Later under cross-examination he said the total amount paid out for insurance on the encumbered property during the period subsequent to the execution of the deed of trust was $6,603.07 and that refunds collected on insurance amounted to $702.06. This would make the net disbursement for insurance $5901.01. The total amount paid out for taxes was $2,218.03. The amount paid on the $95,000 note was $7,000, as has been stated. This is as far as the evidence goes toward showing the actual disbursements from rent received under the Wilson lease. Whether $5,000 was spent annually for betterments, as the lease required, was not shown; neither did the witness state the amount of rents received.

The Wilson lease expired on or about February 1, 1921, and the lessee declined to renew it. There being no income from the property and the payments on the secured note being delinquent for ten months, the respondent directed the trustee to foreclose under the deed of trust. That is the respondent's version of the matter. The notice of foreclosure sale was duly published and on March 3, 1921, the property was sold at public vendue by the trustee, the American Trust Company. It was further shown the latter corporation is a subsidiary of the respondent, and that the two have the same offices and employees. The trustee's deed to the purchaser, and the published notice of foreclosure as well, recited that default had been made for three consecutive months in the payment of installments due on the note.

On cross-examination of respondent's witness Gottlieb appellant's counsel attempted to elicit the admission that the $60,376.45 cash loan by the respondent to the Mathiason Company was advanced for the purpose of taking up an indebtedness due from the latter to the National Bank of Commerce, but the court excluded the testimony. The appellant then asked if the respondent had not coerced the Mathiason Company into purchasing the Mayer property at an excessive valuation as a condition precedent to advancing the funds aforesaid, and the court ruled the question incompetent. A similar ruling was made when appellant's counsel inquired if the Mathiason Company was exercising its charter powers at the time the deed of trust was executed and the Mayer property purchased; and also when appellant asked how much of the money paid for taxes covered taxes assessed against the Mayer property alone. No offer of proof was made covering these matters.

The appellant Sessinghaus then took the stand and his counsel started to inquire concerning the financial condition of the Mathiason Company when the deed of trust was executed, and whether at that time it was engaged in manufacturing glue and kindred products. An objection to this line of questions being sustained, the appellant

offered to prove the company was not then in the manufacturing business or exercising its charter powers; that its plant for some years prior to the execution of the Wilson lease had been leased at a nominal rental to one Gertrude Morgan who had assigned her lease to a concern called the Mathiason Glue Company, and the latter was operating under a partnership contract with the National Glue Company; that during all those years and down to the day of trial the corporation which held title to the real estate, the P. B. Mathiason Manufacturing Company (or the Mathiason Company as we have called it herein) had never exercised any of its corporate functions.

The appellant offered to show, further, that the Mathiason Company was insolvent, and did not have enough money to operate; that it was in the market for operating capital; that the appellant had attempted to float a $60,000-bond issue for it, and, failing in this, the company borrowed that sum from the National Bank of Commerce; that the latter sold the note at a discount to the National Glue Company, and it was to take up that note that the note and deed of trust involved in this suit were given; that the Mayer Property was not sold to the Mathiason Company for any operating purpose, because it had no use for the Mayer property and was not using even the real estate it already owned. Other facts will be stated in the course of the opinion as necessary.

I. Appellant's first contention is that the burden of proof was on the respondent to show the foreclosure sale was made in accordance with the provisions of the deed of trust, whereas there was an entire failure of proof on that issue, and the fact is that there had been no default in the payments due on the note and therefore no breach of the conditions of the deed of trust.

The cases cited by appellant announce the general rule that the burden of proving the affirmative of an issue rests upon the party alleging the facts tendering the issue, as in Griffith v. Continental Casualty Co., 299 Mo. 426, 444, 253 S. W. 1043, 1048. Along the same line is the doctrine that one who relies on the fulfillment of a condition precedent must plead and prove it. [31 Cyc. 107; 22 C. J. secs. 14, 16, pp. 68, 72; 13 C. J. secs. 957, 958, p. 764.] So, also, it is said that while payment is ordinarily an affirmative defense as against an action on a simple obligation for the payment of money, yet when non-payment is an essential element of a plaintiff's cause of action he carries the burden of showing a failure to pay. [48 C. J. sec. 177, p. 683; St. Louis Perf. Tire Co. v. McKinney, 212 Mo. App. 355, 362, 245 S. W. 1100, 1103.]

But notwithstanding all this, the rule seems to be that "the burden of proving payment of a mortgage debt or of matter in

reduction of the amount apparently due is on the party setting it up, whether he pleads it in defense to a suit to foreclose the mortgage, or alleges it as a ground of relief in an action to redeem or to cancel the mortgage or otherwise stop its enforcement." [41 C. J. sec. 914, p. 792.] See, also, Brown v. Morgan, 56 Mo. App. 382, 385; Harrison v. Doyle, 163 Mo. App. 602, 605, 147 S. W. 504, 505; and Conkling v. Weatherwax, 181 N. Y. 258, 73 N. E. 1028, 2 Ann. Cas. 740, which latter decision holds the contrary.

A ruling on the assignment in the instant case is not, however, dependent on a determination of the question as to where the burden of proof lay on the issue of payment. For the trustee's deed expressly declared there had been a default for three consecutive months in the payment of installments due on the note secured, and by force of the statute this recital was prima-facie evidence of the fact stated. [Sec. 2253, R. S. 1919; Hoffman v. Bigham (Mo.), 24 S. W. (2d) 125, 130; Hassler v. Mercantile Bank of La., 267 Mo. 365, 371, 184 S. W. 978, 979.] Furthermore, the credits on the note itself showed the default as did the testimony of the witness Gottlieb, and there was no evidence to the contrary. This at least met the burden of evidence and made a prima-facie case, Downs v. Horton, 287 Mo. 414, 431, 230 S. W. 103, 108. Appellant is clearly wrong in saying there was a total failure of proof.

Appellant complains further that the respondent failed to produce a statement of the rents collected under the Wilson lease by the American Trust Company as trustee, and asserts if such showing had been made it would have disclosed sufficient net rents were paid in to meet all installments on the note accruing up to the time of the alleged default if they had been properly credited. There is no merit in this assignment. Neither the burden of proof nor the burden of evidence required the respondent to go further in the first instance than to show the ultimate fact that there had been a default. Indeed, the appellant did not plead in its answer any failure on the part of the respondent or the trustee properly to account for the rents, except on the theory that a portion of the rent received was wrongfully applied to the payment of a part of the $95,000 indebtedness which was illegal in that it represented the price of the Mayer property purchased *ultra vires*. That undoubtedly was an affirmative defense, and other than that the answer contained only a general denial and an affirmative allegation that there had been no default. And as to appellant's insistence that as a matter of fact there had been no default, he made no offer to prove it and the evidence does not show it.

Another contention presented is that the provisions of the deed of trust were too vague and indefinite to permit of a foreclosure

sale by the trustee under the power of sale contained in the instrument, and that a court action should have been resorted to. This assignment requires no extended notice because appellant has not pointed out any particular defect in the deed of trust, has cited no authorities in support of his contention and did not set up any such defense in his answer. Indeed, the matter is passed over with one sentence in the brief.

II. The next ground urged for reversal is that the American Trust Company, trustee in the deed of trust, was a subsidiary corporation of the respondent and that both had the same business quarters and were manned by the same employees. It is ▆▆▆▆▆▆ contended this close relationship between the two corporations disqualified the American Trust Company to act as trustee and presumptively rendered the foreclosure sale void. No such issue was tendered by the answer. Furthermore, the authorities cited by appellant do not sustain his contention. 2 Perry on Trusts (7 Ed.), section 602-o, page 1034, and Givens v. McCray, 196 Mo. 306, 93 S. W. 374, merely say the trustee must discharge his duties impartially and fairly consult and protect the interests of all the beneficiaries. But while he must thus acquit himself it is not the law that he must be in fact disinterested. [39 Cyc. p. 246; 1 Perry on Trusts (7 Ed.) sec. 59, p. 46.] For illustration, in Cassady v. Wallace, 102 Mo. 575, 580, 15 S. W. 138, 139 (cited by appellant) this court said: "It is true Brinkenhoff was trustee and the real owner of the note when the deed of trust and note were executed, but that fact does not render the sale made by him void. His position was that of mortgagee with a power of sale."

III. The next and main assignment urged by appellant is that the $95,000 note and deed of trust and the foreclosure proceedings based thereon were wholly or partly void, or voidable as against ▆▆▆▆▆▆ the appellant, because the Mathiason Company was insolvent and had retired from the manufacturing business and leased its property when it bought the Mayer property by giving the note and deed of trust. (We take appellant's proffered evidence at its face value in considering this point.) The contention is that this made the purchase of the Mayer property, for which $35,000 of the note was given, ultra vires and thereby cut away that much of the consideration supporting the note.

Appellant's theory is that under Section 7, Art. XII, Constitution of Missouri, and Section 9749, Revised Statutes 1919, the Mathiason Company could own and hold only such real estate as was necessary in conducting the business authorized by its charter; and since the company was insolvent or in failing circumstances.

and had ceased to manufacture glue and kindred products and had leased its plant to others, therefore it did not need, and could not use, and did not intend to use the Mayer property in the glue manufacturing business. This being so, says the appellant, the company was not authorized by law to buy the property and take title.

We are unable to accept this view of the case. In the first place, the financial difficulties of the corporation and the fact that it was not at the date of the conveyance actually making glue, but had leased its plant to others who were engaged in that business, do not by any means signify it had forfeited its corporate existence. [14a C. J. sec. 3734, p. 1118, sec. 3735, p. 1119; Hidden v. Edwards, 313 Mo. 642, 661, 285 S. W. 462, 467; Elliot v. Sullivan, 156 Mo. App. 496, 508, 137 S. W. 287, 290.] The Mayer property immediately adjoined the plant of the Mathiason Company and had been used in manufacturing fertilizer—at least the former owner was called the Mayer Fertilizer Company. That was also one of the products of the Mathiason Company, and likewise one of the by-products to be manufactured by the lessee under the Wilson lease. It does not clearly appear the Mayer property was included in the Wilson lease; the inference is rather to the contrary; but enough is shown to warrant the conclusion that both parcels of real estate could be used together in the business for which the Mathiason Company was incorporated. We can take judicial notice of current history and recall that in 1918 and 1919 business was going through a period of expansion induced by and following the World War. [State ex inf. Atty. Gen. v. Dallmeyer, 295 Mo. 638, 644, 245 S. W. 1066, 1068.] The evidence does not show the Mathiason Company had permanently ceased to function as a corporate entity, or that the Mayer property was taken over without any intention or reasonable possibility at the time of using it thereafter for proper corporate purposes.

But we dissent from appellant's contention chiefly on another ground. Even if the act of purchasing the Mayer property was *ultra vires* we think the appellant cannot raise the question. As was said in Conn. Mut. Life Ins. Co. v. Smith, 117 Mo. 261, 289, 22 S. W. 623, 628, 38 Am. St. Rep. 656:

"The settled law of this State, as illustrated by frequent instances in this court, is that the capacity of a corporation to take a conveyance of land cannot, after the transfer has reached completion, be called in question in a collateral way, but by the State and not by a private suitor. This doctrine applies to all classes of actions and in every variety of cases. [Citing decisions.]

"The only exception to the rule which prohibits collateral attack by private persons on such conveyances or other unauthorized acts of a corporation, is where such attack is authorized by express legislative permission. [Citing cases.]"

See, also, 7 R. C. L. sec. 553, p. 567; 14a C. J. sec. 2499, p. 559; Hall v. Farmers & Merchants' Bank, 145 Mo. 418, 425, 46 S. W. 1000, 1002; Summet v. City Realty & Brokerage Co., 208 Mo. 501, 512, 106 S. W. 614, 617; Gold Issue Mining & M. Co. v. Penn. Fire Ins. Co., 267 Mo. 524, 609, 184 S. W. 999, 1023.]

The purchase of real estate by a corporation is not forbidden altogether, by law; and the provisions of Section 7, Article XII, of the State constitution and of Section 9749 (4), Revised Statutes 1919, limiting the amount of real estate a corporation may hold to such "as may be necessary and proper for carrying on its legitimate business," are not regarded as an express prohibition rendering the acquisition of land invalid even though the transaction involve an excessive use or abuse of corporate power. After the conveyance is consummated the doctrine of *ultra vires* cannot be invoked by either party, much less by third persons—except the State and perhaps sometimes the stockholders. Performance on one side will exclude that defense, especially where the other party has reaped the benefit thereof, if the transaction is not *malum in se* or *malum prohibitum*. [Schlitz Brewing Co. v. Mo. Poultry & Game Co., 287 Mo. 400, 407, 229 S. W. 813, 814; Cantley v. Little River Drainage Dist., 318 Mo. 1120, 1133, 2 S. W. (2d) 607, 612; Illinois Fuel Co. v. M. & O. Rd. Co., 319 Mo. 899, 926, 8 S. W. (2d) 834, 844; Farmers' & Traders' Bank of Auxvasse v. Harrison (Mo.), 12 S. W. (2d) 755, 758.]

But appellant asserts the sale of the Mayer property in this case was not fully completed, that it remained executory. This contention is entirely unsupported and unsupportable, in our view. The deed therefor was executed, accepted by the Mathiason Company and paid for by the delivery of the negotiable note and deed of trust involved in this suit, covering also another indebtedness and encumbering other real estate which is the subject of the present controversy. The fact that the note was executory—an unperformed promise to pay money—did not make the *sale of the land* any the less a completed transaction than if the whole consideration had been paid in cash. The sale was fully consummated on the respondent's side at least by the delivery of the deed and of possession.

To this appellant answers that the deed of trust was later foreclosed and that respondent got the Mayer property back and suffered no loss. He argues equity ought to look at the case as if the sale had never occurred and the title had never passed. We do not see how the accidental circumstance that the respondent became repossessed of the title can wipe out the record. The respondent was out of the possession and ownership for over two years and certainly did not get back the usufruct by the foreclosure; and besides, the case is not one in which the court can disregard the

'conveyance. The answer does not claim and the proof does not show the purchase and mortgaging of the Mayer property was in violation of any trust or in fraud of appellant as a creditor. The deed was executed in January, 1919, and the appellant did not get his judgment until October, 1920, a year and nine months later. There is no showing that he was a creditor when the title was transferred.

Before passing the question by, however, we should refer to two cases which are relied on by appellant. In Hunter v. Garanflo, 246 Mo. 131, 151 S. W. 741, the plaintiff H sold his stock in a corporation either to the corporation or to M, its president (the evidence did not show clearly which one), and received therefor notes secured by a mortgage on the corporate realty, both the notes and the mortgage being signed by the corporation, by M, and by all the other stockholders. The corporation made an assignment for the benefit of creditors and the plaintiff H sued the assignee to enforce the lien of the mortgage. This court held the corporation had no right to traffic in its capital stock either on its own account or by signing and pledging its real estate as security for M; and that the transaction amounted to a reduction of the capital of the corporation in violation of Section 3354, Revised Statutes 1909 (now Sec. 10159; R. S. 1919) and of the spirit of the Constitution, and was also against public policy. It was ruled the execution of the mortgage was *ultra vires* and that the lien thereof could not be enforced.

The court said further in passing that the mortgage contract was *executory.* If that was one of the bases of decision the case tends to sustain appellant's contention. But the corporate stock had been sold and delivered just as in this case the Mayer property was sold and the deed delivered; and that was certainly complete performance on one side. We are unable to harmonize the decision in this Hunter case with the later rulings in Schlitz Brewing Co. v. Mo. Poultry & Game Co., supra, and the cases cited in connection therewith, though we do not question the conclusion reached. In our opinion, however, the decision would have rested on safer ground if confined to the proposition that the purchase of the stock by the corporation out of its capital assets was *malum prohibitum,* or expressly forbidden by law. [13 C. J. sec. 351, p. 420, and Sec. 360, p. 424; 14A C. J. sec. 2124, p. 277, and Sec. 2126, p. 282.]

The other case is Wilson v. Torchon Lace & Merc. Co., 167 Mo. App. 305, 325, 149 S. W. 1156, 1162. There the plaintiff purchased stock in the defendant corporation on its agreement to take back the shares and refund the purchase price at his option. He sued to rescind the contract on the ground of fraud and for the return of his money, but the court held the suit was in effect one to en-

force performance of the corporation's agreement to repurchase and denied a recovery because the transaction was *ultra vires*. The plaintiff argued the contract was executed and that the plea of *ultra vires* could not be entertained, but the St. Louis Court of Appeals put aside that contention by saying the agreement was still executory "so far as the corporation itself is concerned." Here again, as the foregoing statement sufficiently shows, the court treated the plaintiff's full performance as insufficient to bar the defense of *ultra vires,* whereas Schlitz Brewing Co. v. Mo. Poultry & Game Co., supra, and the other cases cited with it all hold to the contrary; and the conclusion reached could well have stood on the proposition that the statute and public policy, forbid the making of such agreements when they trench on the corporation's capital.

The Mathiason Company got the Mayer property and over $60,000 in cash for executing the $95,000 note and deed of trust. It received both the land and the money. That was all the respondent was to do, to perform the contract on its side. The contention that the transaction was *ultra vires* cannot be made by a creditor coming into court over seven years thereafter, for the reasons stated.

IV. The last assignment is that the trial court erred in sustaining respondent's objections to certain questions propounded to the witness Gottlieb by appellant's counsel on cross-examination. The inquiry made was as to the amount of money paid for taxes on the Mayer property, separate and apart from the Mathiason Company's own plant, during or for the years 1919 and 1920—which covered the period from the execution of the deed of trust until its foreclosure. So far as we can see from reading the record the witness answered the questions and gave the figures as fully as his books showed them.

But at one place there was an objection, and the court asked appellant's counsel his purpose in seeking to elicit this testimony. Counsel replied if the facts were developed they would show a substantial part of the rentals under the Wilson lease was applied to the payment of taxes, insurance and other expenses on the Mayer property which the Mathiason Company had no right to buy; and that if the $35,000 paid for that property were deducted from the $95,000 note, and the rentals received were all credited to the valid balance of $60,000, and the taxes, insurance, etc., on the Mathiason plant alone, there would be no default. The court then said there was no reason to go into any accounting until the appellant had first established its defense of *ultra vires* as regards the Mayer property.

Very little, if any, of the evidence was excluded, as we say, but appellant now asserts on appeal the respondent's objection was general and not specific, and that the evidence kept out was at least

competent for one purpose, i. e., to show there was no default at all, even on the whole note as it stood. It is insisted further the colloquy shows the court had the wrong theory of the case. There is no substance to these contentions. The reasons given now were not given when the evidence was offered. The purpose in presenting it was explicitly stated. Besides, the witness did give the *whole* amount expended for taxes and insurance, which showed what part of the rentals was diverted to these expenses as against the whole note.

We find no error in the record. The judgment is affirmed. *Lindsay* and *Seddon, CC.,* concur.

PER CURIAM:—The foregoing opinion by ELLISON, C., is adopted as the opinion of the court. All of the judges concur.