WILLIAM C. JAMISON, Appellant, *v.* WILLIAM D. GRISWOLD, Respondent.

April 25, 1876.

In 1872 G. and wife executed a deed, conveying certain real estate to "the people of the city and county of St. Louis," for the purposes of Forest Park, and declared therein that the real estate remained subject to the payment of certain Forest Park bonds, issued for the purchase money of the land conveyed. The act of 1872, establishing Forest Park, was held to be unconstitutional, and another act for the same purpose, free from constitutional objections, was passed in 1874. Under the provisions of this act, the land conveyed by G. and wife, in 1872, was taken for the use of the park, its value being fixed at $58,743, which was paid into the Circuit Court for the use of the owners of the land. Certain of these bonds had passed out of the hands of G. into the hands of J. *Held*, that G. was estopped to deny the validity of the bonds, and that J. was entitled to be paid therefor out of the assessed value of the land then in court.

APPEAL from St. Louis Circuit Court.

*Reversed and remanded.*

*T. C. Reynolds*, for appellant, cited: Remsen *v.* Graves, 41 N. Y. 471; Erwin *v.* Downs, 15 N. Y. 575; Nightingale *v.* Withington, 15 Mass. 272.

*S. M. Breckinridge*, for respondent, cited: Byles on Bills (4th ed.), 123; Story on Prom. Notes (6th ed.), 124, sec. 117; Nutwell *v.* Tongues' Lessee, 22 Mich. 419.

GANTT, P. J., delivered the opinion of the court.

Under an act of the General Assembly, approved March 25, 1872, to establish Forest Park (Session Acts of 1871, adjourned session, p. 255), Leffingwell, Baker *et al.* were made commissioners of the park, with power (sec. 9) to obtain from the proprietors of the land within its limits, by agreement upon the price, the title to such land ; and, in case of failure to agree, provision was made for obtaining the title by condemnation. By section 11 the commissioners were directed to issue their bonds, designating them as " Forest Park bonds," running for twenty years, with 7 per cent., payable semi-annually, with coupons attached, and secured on the lands so purchased or condemned by such instruments in writing as the commissioners might agree on, which should be in every instance a first lien on the land. On October 23, 1872, Griswold and wife acknowledged the execution of a conveyance, dated October 2, 1872, for certain real estate within the park, according to the provision of section 6. It recited that the grantors had agreed with the park commissioners to sell the lands, and proceeded to sell them, to the " people of the city and county of St. Louis," by the words *grant, bargain, and sell,* but subject to the conditions that, whereas, the commissioners, in consideration of the conveyance, had issued and delivered to Griswold certain Forest Park bonds, numbered, etc., dated, etc., said bonds being issued for the purchase money of the premises conveyed, if the bonds should be paid, then the lands should be released, but if they should remain unpaid, then the lien should be enforced in the manner provided for by the General Statutes of Missouri for the foreclosure of mortgages, deeds of trust, etc. It was further provided that, if it should become desirable, the commissioners might subject to one general lien or incumbrance all the lands in the park, for the purpose of securing all the bonds issued for the purpose of raising the purchase money.

. It would appear that the bonds thus issued to Griswold were made payable to W. D. Griswold, or bearer, and that they afterwards came into the possession of Jamison. How they passed from Griswold does not appear.

The act incorporating the commissioners of Forest Park was declared to be unconstitutional in the year 1873 (54 Mo. 458, 477). In March, 1874, another act was passed, having the same title, and creating a park with the same limits that were defined in the act condemned by the Supreme Court. This last act was upheld by that tribunal.

By section 2 of this act the County Court of St. Louis county was empowered to institute proceedings to condemn for public use the land within the limits of the park, and by section 3 it was provided that, if the title to any such land should be in dispute, the Circuit Court should make any order respecting it which it deemed fit, not inconsistent with that act. Proceedings were commenced to condemn the land, against W. D. Griswold and others, and W. C. Jamison intervened, setting forth the facts before recited, and claiming that the bonds held by him were a lien on the land of Griswold; that this land had been condemned for the purposes of a park; that its assessed value, $58,743, had been paid into the Circuit Court by the County Court of St. Louis county, and praying the court to decree that the bonds held by him should be paid to him out of this fund. W. D. Griswold demurred to this claim, alleging that it did not exhibit a cause for relief, because the act of March 25, 1872, being unconstitutional and void, and the board of commissioners mentioned in it having no legal existence, the bonds issued by them were of no legal validity or value, nor capable of being secured by said deed. The Circuit Court sustained the demurrer, and gave judgment against Jamison and in favor of Griswold, and, after the usual motion, the case was brought to this court by appeal.

The statement made by appellant, which is very full and

perspicuous without redundancy, is accepted as correct by the respondent.

The bonds issued by the commissioners acting under the unconstitutional act of March 25, 1872, were in no sense binding on the people of the county of St. Louis; but they would not have been binding on the county even had that act not come within the prohibition of the organic law. It was provided in the 11th section of that act that the bonds issued by the commissioners should be secured on the lands purchased or condemned by such instruments in writing as the commissioners might agree upon, "but the city or county of St. Louis shall not, in any event or in any manner whatever, be responsible for the payment of the principal or interest on said bonds." It was intended that the land condemned or purchased should be the fund whereout the redemption of the bonds should come; and it remains to inquire whether the provisions made in the deed executed by Griswold to the people of the city and county, as agreed on by the commissioners, remain, notwithstanding the nullity of the act of the General Assembly, a valid incumbrance on the land in the hands of Griswold.

Let it be supposed that directly upon the delivery of this deed to the commissioners, and the delivery to Griswold of the bonds, the judgment of the Supreme Court declaring the act a nullity had been pronounced. Obviously the whole transaction would have fallen to the ground. The deed and the bonds would have been alike waste paper.

But this is not the case before us. The bonds have passed into the hands of a third person, and we must presume that in some manner Griswold has profited by their transfer. Otherwise he would surely be heard complaining that the securities, if enforceable at all, were enforceable by him alone, and that plaintiff was a volunteer or an intruder.

If plaintiff had given value for the bonds, directly or indirectly, to Griswold, and, no further legislation having

occurred, Jamison had claimed the lien declared by Griswold in his deed of 1872, we do not see what answer could have been made in opposition to his claim. The lien had been created by the voluntary act of Griswold. We are relieved of all the embarrassing questions that might have arisen if, instead of this voluntary deed, proceedings to condemn the land of Griswold had been conducted under the supposed authority of the Forest Park act of 1872. Obviously there is a wide difference between the operation of a deed executed by a competent party, and creating a lien in the enforcement of which third persons, giving credit to the recitals and provisions of the instrument, have become interested, the only objection to which is that the grantee has no legal existence, or no legal capacity to take the estate which the deed professes to convey, and a decree of a court in a cause to which this incapable grantee is one party, and the other is a person who resists the proceedings at every step. We need not dwell on these differences. We have before us the case of one who, in 1872, with his own free consent, and with his eyes open, agreed to a sale of his land for certain securities, retaining a lien on his land for assuring the payment of these securities. There can be no question that he thus gave to them the only value they possessed. They were not in any proper sense the obligations of the city or county, for it was expressly declared that neither was answerable for their payment; they were not the obligations of the individual commissioners; and the only source of payment to which any person could look was the land itself for which they issued, and on which a lien was reserved or created to secure that payment. The deed executed in 1872 to the people of the city and county was either operative to convey to them the title of Griswold or it was not. If it did so operate, the grantee took the title *cum onere*—subject, that is to say, to the payment of the bonds, for Griswold will hardly contend that the grantee was discharged of the obligation to pay the bonds because

they were nullities, and that, therefore, the people got the land for nothing. If by reason of the want of power to purchase, the people of the city and county took nothing by that deed (a proposition of which the case of *McIndoe* v. *The City of St. Louis*, 10 Mo. 575, may suggest doubts), it by no means follows that, after Griswold has sold the bonds secured by it, and appropriated the proceeds, he can repudiate the conditions which he himself created, and which alone enabled him to sell the bonds at all. As a conveyance the deed may fail. It may—and, under the circumstances shown, it must—stand as an equitable, no less than a legal, mortgage. If, instead of the mortgage clause being expressly set forth in the deed itself, it had been intended to secure all the bonds issued by a general mortgage to be devised by the commissioners, and this intention had been expressed in the bonds, but never actually consummated, the designation of " *equitable* mortgage only " would be more appropriate. As matters stand, no formality seems to be wanting.

It is quite immaterial whether Griswold, on selling the bonds, indorsed them or transferred them, payable as they were to bearer by delivery only. We take it as admitted that he did in some way sell and deliver them, or that he enabled some one else to sell and deliver them ; that he was instrumental in sending them forth to the world after having, in the manner stated, given credit to them and provided for their redemption. We almost incline to the opinion that there is something, not appearing by the record lodged in this court, which yet belongs to the record and influenced the judgment of the Circuit Court. As we view it, Griswold can not be allowed to prevail against Jamison in the controversy without the overthrow of some of the most cherished and well-settled principles of equity.

It seems to us that he has induced others to treat these bonds as valid securities by declaring them, in a solemn manner, to be a lien on land belonging to him ; that he has

sold the bonds, the value of which in the market depended solely on the credit due to this declaration, and that his present attitude is that of a man who for some reason, no matter what, now wishes to repudiate that declaration, and deprive of all benefit of the security thereby promised those who have expended their money upon the faith of it. If this can be done, we must unlearn the law on the subject of estoppel. The cases to which the Supreme Court of Missouri has considered it to be applicable were not nearly so strong as that shown by this record. *Taylor* v. *Zepp*, 14 Mo. 482; *Lindell* v. *McLaughlin*, 30 Mo. 28; *Garnhart* v. *Finney*, 40 Mo. 449.

The judgment is reversed and the cause remanded, all the judges concurring.