WILLIAM C. JAMISON, Defendant in Error, v. WILLIAM D. GRISWOLD, Plaintiff in Error.

January 7, 1879.

1. One to whom a bond is made payable, and who guarantees and then negotiates the same, is estopped to deny its validity as against himself.

2. An adjudication of the unconstitutionality of the bonds does not deprive the holder of the capacity to bind himself and his property to the payment thereof; and though the bonds were originally void, yet the holder, having by his guaranty and the pledge of his real estate given them currency, cannot repudiate his pledge at the expense of his transferee.

ERROR to St. Louis Circuit Court.

*Affirmed.*

S. M. BRECKINRIDGE and J. M. & C. H. KRUM, for

plaintiff in error : The bonds to whose payment the defendant in error seeks to subject the fund awarded to the plaintiff in error were not only void when the defendant in error received them, but they bore upon them express notice of their invalidity. The act under which they were issued was set forth at large upon each bond. It follows, therefore, that the defendant in error obtained the bonds with full notice of their invalidity. — *McClure* v. *Oxford*, 94 U. S. 429 ; *Harshman* v. *Bates County*, 92 U. S. 569 ; *Cromwell* v. *Sac County*, 96 U. S. 59 ; *The State ex rel.* v. *Leffingwell*, 54 Mo. 458. The fact that the defendant in error had notice and knowledge of the invalidity of the bonds, and the act under which they were issued, removes the case at once from the operation of the doctrine of estoppel against the plaintiff in error. — *Boggs* v. *Mining Co.*, 14 Cal. 279 ; *Green* v. *Prettyman*, 17 Cal. 401 ; *Fletcher* v. *Holmes*, 25 Ind. 458 ; *Rice* v. *Bunce*, 49 Mo. 235 ; *Andrews* v. *Lyon*, 11 Allen, 349 ; *The Commonwealth* v. *Moltz*, 10 Barr, 531 ; *Gordon* v. *Arnold*, 22 Mich. 247 ; *Tenney* v. *Hand*, 32 Mich. 63 ; *Crawford* v. *Lockwood*, 9 How. 547 ; *Shapleigh* v. *Abbott*, 42 N. Y. 448 ; *Kneettle* v. *Newcomb*, 31 Barb. 169 ; *Hutchins* v. *Hebbard*, 34 N. Y. 24 ; *Danforth* v. *Adams*, 29 Conn. 111 ; *Rutherford* v. *Tracy*, 48 Mo. 325 ; *Kincaid* v. *Donnell*, 51 Mo. 552. It is a total misconception of the scope of equity jurisdiction to suppose that, on the theory of an equitable mortgage, the fund now in controversy can be subjected to the claim of the defendant in error. — *Stevens* v. *Cooper*, 1 Johns. Ch. 426, 431 ; *Parkman* v. *Welch*, 19 Pick. 231, 238 ; *Fassett* v. *Traber*, 20 Ohio, 540 ; *Craythorne* v. *Swinburne*, 14 Ves. 160 ; *Black* v. *Shreeve*, 3 Halst. Ch. 457.

T. C. REYNOLDS and GEORGE W. CLINE, for defendant in error.

LEWIS, P. J., delivered the opinion of the court.

This case was before us at the March term, 1876, and is reported in 2 Mo. App. 150. The history of the subject-

matter is there carefully detailed, and need not be repeated here. After the remanding of the cause to the Circuit Court, the intervenor, Jamison, filed by leave of court a new interplea, repeating substantially the grounds of the original; and the defendant put its allegations in issue by a general denial. There was a trial before the court sitting as a jury, and judgment was given in favor of the interpleader for $2,427. Both parties moved unsuccessfully for a new trial, and the defendant has brought the case here by writ of error.

We are asked by defendant's counsel to review our former opinion in this cause, and to modify some of its conclusions. We think, however, that the positions there assumed are fully sustained by authority, and that the reasoning of the learned judge who delivered the opinion cannot be successfully controverted. Our conviction is unshaken that, upon the case there presented, the defendant was estopped to deny the validity of the bonds in the hands of the interpleader, and that a proportional satisfaction of them was due out of the proceeds of the condemnation, which had been paid into court.

But the defendant insists that the present record develops some new elements of fact which supersede the application of our former adjudication as a controlling authority in this. The argument drawn from these elements seems to rest chiefly on the proposition that the interpleader took the bonds with full knowledge of their alleged infirmities by reason of the unconstitutionality of the act of March 25, 1872, under which they were issued. The argument assumes too much. It is true that the decision of the Supreme Court against the validity of that law deprived the park commissioners of a corporate existence. It nullified all their acts and their supposed obligations. As to them the bonds were null. But did the fact deprive the defendant of all capacity to bind himself or his property with reference to the bonds? This is the real question which

the defendant individually raises, and yet seems to ignore
in all the discussion.   If the defendant could bind his prop-
erty for the  payment of the sums mentioned in the bonds,
at the times and in the manner therein set forth, and did do
so, it matters not what the holder knew or did not know con-
cerning their origin.   It seems to be forgotten that if the
interpleader, with the act of 1872 before him, printed on the
backs of the bonds, was thus charged with notice of its
unconstitutionality, the defendant himself had precisely the
same notice when he executed the deed charging his land
with the redemption of the bonds.   He knew, according to
his own theory, that the bonds were originally void.   Yet
he voluntarily executed a deed, — not to the abortive or
non-existent corporation, but to " the people of the city
and county of St. Louis," — solemnly guaranteeing the
validity of the bonds in the hands of any future holder, and
pledging his land to sustain the guaranty.   With what sort
of grace can he now say that his pledge meant nothing,
although it gave to the bonds a market value which he him-
self has realized at the expense of his transferrer and of the
interpleader?

It appeared, in addition to the facts stated in our former
opinion, that the consideration expressed in the defend-
ant's deed was $82,740 ; for which, as recited in the
deed, the commissioners had issued and delivered to the
grantor seventy-six Forest Park bonds, under the act of
1872.   In fact, however, only ten of the bonds were actu-
ally delivered, of which six are the bonds concerned in this
controversy.   They were in form negotiable, payable to
bearer, and to mature in twenty years.   The act of 1872
was printed on the back of each bond, and in the body of
each was the following statement :  " This bond, and each
and every of all others issued under said act, not exceeding
altogether the sum of $1,200,000, has a lien, common to all
said bonds, of the nature and operation of a mortgage,
upon all the lands acquired and to be acquired for said park,

and which lien is the first thereon, and shall be enforceable in the manner mortgages are foreclosed, for the payment of this bond and its coupons, in any court of competent jurisdiction for foreclosing mortgages on real estate held in the city of St. Louis in said State.''

In 1871 the defendant made an agreement with James B. Geggie, a partner in the firm of Leffingwell & Co., real-estate agents, by which the agents were to '' engineer, work up, and work through '' the act then in contemplation for establishing Forest Park ; in consideration whereof defendant was to convey to them five acres of his land within the boundaries of the park. After the passage of the act, it was agreed that in lieu of the five acres defendant should give to Leffingwell & Co. the ten bonds above mentioned. Geggie took the bonds and used them in part-payment, at par value, for a tract of land purchased from Jesse C. Lindell. Lindell transferred six of the bonds to his mother, Mrs. Ellen Davis, who ultimately gave them to Martrom D. Lewis as collateral security upon a note for $2,660.26, indorsed by Jamison, the present interpleader. The note was protested at maturity for non-payment, and the interpleader, as indorser, paid it, and took the bonds with the note into possession. These facts clearly entitle the interpleader to the position of a holder, for value, of negotiable paper before maturity, unless the defendant can show that as to himself and his land the bonds carried no obligation notwithstanding the terms of his deed.

Defendant contends that the only mortgage in existence, if any, was created by the park commissioners, and not by any act of his. This is directly in the teeth of the undisputed facts. The commissioners were the purchasers of the land, it is true ; and in the most usual order of such transactions, having acquired the title without paying the purchase-money, they should mortgage the land back to the vendor to secure the deferred payment. But such was not the course adopted in this instance. The defendant owned

the land, and could convey it upon whatever terms and conditions he pleased. He chose to convey it subject to a condition that if the bonds or their coupons were not paid at maturity, the land should be sold to pay them. If this constituted a mortgage or a lien at all, it was purely of the defendant's creation. It matters not by whom the bonds were signed, or whether they were signed at all. They expressed on their face an intelligible promise to pay money. The defendant had a right to direct that his land be sold, if necessary, to fulfil that promise, and he did so.

But it is further insisted that, inasmuch as the defendant's deed provided that the commissioners might subject all the park lands to one general lien for securing all the bonds to be issued, and the bonds themselves contained a statement, as already shown, declaring the existence of a lien common to them all, this statement was the real and only mortgage, and wholly superseded and annulled the particular lien upon defendant's land created by his deed. This position is untenable. The general lien provided for in the deed was to be a creation of the future. The bonds had already been issued, and were specifically described in the deed. Something not a part of their contents was necessarily intended by the provision for a general lien, " if it should become desirable," to be thereafter effected by the commissioners.

Defendant lays stress upon the fact, testified to by himself, that Geggie took the bonds from him "for what they might be worth." There is nothing in this to impair the security which was coexistent with the transfer. The bonds were taken for what they were worth as they stood, with all their surroundings and adjuncts, including the lien upon defendant's land to secure their payment. Geggie was entitled to a conveyance of five acres from the defendant, which he had fairly earned. He took the bonds instead, and thus gave for them a valuable consideration. The deed which secured them had already been executed and delivered.

It is urged that when the interpleader took the bonds he knew nothing of the existence of defendant's deed. It is of no consequence whether he did so or not. The deed was on record. This was notice of its contents to all the world. If the interpleader could not deny such notice, surely the defendant cannot deny it for him. The interpleader testified, however, that when he took the bonds he thought they were good, " because secured by Griswold's deed."

Under the act of March 25, 1874, the defendant's land was regularly condemned for park purposes, and its value assessed at $58,743, which sum was paid into court by the county of St. Louis. At this stage the defendant claims that he is entitled to receive the whole amount thus paid for the appropriation of his property. But it is discovered that he has already received part of it. He discharged his obligation to Geggie by means of the bonds here in controversy, and thus saved his five acres of land. The bonds passed from hand to hand as negotiable paper backed by landed security, until they reached the interpleader, who, as a creditor of Mrs. Davis, has become the holder for value paid. Thus, in effect, the defendant has received and the interpleader has paid so much of the money equivalent of the land taken as is represented by these bonds. If the defendant should now be paid the whole of the assessment, it is certain that to the extent that his indebtedness to Geggie was discharged he would be paid twice. At the same time, the interpleader, who has invested his money upon the natural supposition that once paying should suffice in law for so much of the defendant's claim, would learn that neither the advantages actually reaped by the defendant, nor the solemn assurances in his deed, can avail any thing in behalf of justness or fairness to the party who has indirectly contributed the advantages upon the faith of those assurances. Surely there could be no fairer exercise of equitable authority than that which would separate from

the entire compensation awarded to the land-owner so much thereof as he has already received and enjoyed, and would turn it over to him who holds the evidences of the payment. It matters not that the defendant's original sale was for a sum much larger than that of the subsequent assessment. The sale was void, and he can claim nothing on that account. But this furnishes no argument against his accountability for benefits actually realized out of the void transaction.

There is no propriety in claiming that the amount to be reserved for the interpleader should bear a ratio to the whole amount for which the bonds were to be issued under the void act of 1872. The bonds here in controversy are declared available to the interpleader, not by reason of any thing contained in that act, or of any thing done by its authority, or of any vitality it could impart to any thing that was done or attempted, but because the defendant has realized their face value ; and the interpleader virtually represents the source from which he obtained it. There is no necessary connection between the bonds which by the acts of defendant have been made to attain a practical value, and those which were never used for any purpose, and never had a valid existence. The court below, instead of allowing to the interpleader the face of his bonds in like manner as they had been made available to the defendant, cut him down to a ratio calculated upon the amount of the assessment as compared with the price agreed upon in the original sale. As the interpleader has not appealed, we have no occasion to remark further upon this ruling.

The judgment of the Circuit Court will be affirmed. All the judges concur.