S. L. Cantley, Commissioner of Finance, Appellant, v. Little River Drainage District.—2 S. W. (2d) 607.

Court en Banc, February 4, 1928.

*Bailey & Bailey* and *Gallivan & Finch* for appellant.

*Oliver & Oliver* for respondent.

GRAVES, J.—This is an action by the Commissioner of Finance for the State of Missouri against the Little River Drainage District. The present Commissioner of Finance, S. L. Cantley, was substituted for the Commissioner originally bringing the suit. The action is in two counts. The first count is an ordinary action in replevin, wherein the plaintiff seeks to recover some thirty-eight specifically described notes, and $500 damages for the detention thereof. The second count is one for money had and received. The material portion of this count is as follows:

"Plaintiff states that on the tenth day of January, 1924, at the time the said Bank of Oran closed its doors, the defendant was in possession of a large number of notes, chattel mortgages, and deeds of trust, which belonged to the Bank of Oran and in which the defendant had no right, title, or interest; that the defendant thereafter converted a large number of said notes, mortgages, and deeds of trust into cash, the exact number and description of which are unknown to the plaintiff, collecting thereon the sum of $20,000, which said $20,000 having been had and received by the defendant as stated herein belongs to the plaintiff and is the property of the plaintiff in his official capacity as Finance Commissioner of the State of Missouri, but that the defendant has not paid the same or any part there of to the plaintiff.

"Wherefore, the plaintiff prays for judgment against the defendant in the sum of $20,000, and for costs."

The answer is quite long, but counsel for the defendant say this as to the defense urged:

"The plaintiff's position is that under the law the bank was without authority to pledge collateral to secure the funds obtained from the drainage district. The defendant's position, broadly stated, is that the bank had the express power to pledge the collateral if the transaction be declared a loan, and had the implied power if the transaction constituted a deposit.

"The defendant contends more specifically:

"(1)  That the money obtained was in fact borrowed from the drainage district by the bank, and that instead of the obligation to repay being in the form of a promissory note, it was placed in the form of a certificate of deposit, and that since the certificate of deposit stands on the same legal basis as a promissory note, there can be no question about the power of the bank to pledge the collateral to secure the obligation to repay.

"(2)  That the plaintiff is barred and estopped by reason of the action of the bank examiners, agents and employees of the Finance Department with respect to the collateral pledged by the bank.

"(3)  The third defense interposed by the defendant obviates any controversy about the facts and raises the clean-cut legal issue as to whether or not a bank in Missouri has the implied power to pledge collateral to secure a certificate of deposit. The defendant contends that it does have such power, and that it was lawfully exercised by the now defunct Bank of Oran at the time that it pledged the collateral sued for, and that the plaintiff cannot recover the remaining collateral nor can it recover any of the funds collected by the district from the collateral so pledged."

The learned trial judge filed a written opinion in the case, which has been of much value to us. As to the pleadings he says:

"The petition in the first count is an ordinary action in replevin in usual form. The second count is a simple action for money had and received in usual form. The answer admits that plaintiff is Commissioner of Finance of the State of Missouri; that defendant is a drainage district organized under and by virtue of the laws' of the State of Missouri; that plaintiff, Commissioner of Finance, is in charge of the liquidation of the Bank of Oran from and after the time it closed its doors on January 10, 1924, and that it (drainage district) is in possession of certain notes described in plaintiff's petition, and also other additional notes. The answer further pleads that the notes described in plaintiff's petition and other notes aggregating $60,000 were delivered and deposited with defendant as collateral security to secure the repayment to defendant of $50,000 loaned by defendant to the Bank of Oran on November 3, 1921; that the Commissioner of Finance and his predecessors in office were appraised of this loan and the collateral put up to secure the same prior to January 10, 1924, and subsequent to that date, without any complaint or objection for twenty-one months from and after the closing of said bank, and that the Special Deputy Commissioner in charge of said bank acquiesced in said matter, and in fact assisted and aided the drainage district in the collection of its collateral; that at the time of the closing of said bank, January 10, 1924, defendant had in its possession collateral notes aggregating $61,565.98, and since that date it has liquidated and collected $19,386.82 on said notes. The reply of plaintiff is a general denial. In none of the pleadings was *ultra vires* specially pleaded."

This being an action at law the findings of the trial court as to the facts are material. In the written opinion (called "memorandum of the court") filed at the time the cause was decided, January 3, 1927, we find therein the following relative to the facts:

"In October, 1921, the Little River Drainage District, a political division of this State—a municipal corporation as it may be termed —came into possession of approximately $750,000 by reason of the sale of some of its securities. This fund was procured for the purpose of constructing ditches in the district, and it appears that as the contractors were paid for the work in monthly estimates, the entire amount was not immediately required, and the board of supervisors of the district sought apparently to make a return from this large sum awaiting its proper disbursement as the work of digging ditches progressed. The district sent out a form-letter to banks in Southeast Missouri advising them that it would have some funds available on or about the 12th day of October, 1921, which may be loaned until required by the district. The letter further requires that a certificate or deposit would be demanded from the banks getting the money, to be secured with a surety bond or other collateral satisfactory to the district. In response to this form-letter the

Bank of Oran, located in Scott County, Missouri, made application for $50,000 of these funds, and agreed to either make a surety bond or put up bills receivable of the bank to secure the certificate of deposit to be issued for the funds received. The Little River Drainage District placed $50,000 of these funds in the Bank of Oran, and took in return therefor a certificate of deposit by the Bank of Oran for $50,000, providing for the payment to the district of that amount in monthly installments of between six and eight per cent on presentation of draft by the district with interest at the rate of six per cent on daily balance. The board of directors of the Bank of Oran, in regular session, adopted the following resolution:

" 'The matter of putting up collateral security to the Little River Drainage District in the sum of $60,000 was brought before the meeting, it was decided that the Bank of Oran furnished the Little River Drainage District with $60,000 of their bills receivable, to be held as collateral security until a depository bond could be secured, and on receipt of the depository bond the Little River Drainage District to return to the Bank of Oran their bills receivable, the above named securities to be held by the Southeast Missouri Trust Company as the depository.'

"The surety bond was never obtained by the bank and the collateral was held. This all took place during the year 1921.

"The Bank of Oran closed its doors and was taken in charge by the Commissioner of Finance of the State of Missouri on January 10, 1924, and at the trial of the cause in December, 1926, was still in the hands of such Commissioner of Finance.

"There was no question whatever about the solvency and good standing of the Bank of Oran at the time of the issuing of the certificate of deposit or the pledging of the collateral. Many of the notes pledged to the district have been collected and others remain uncollected and under the control of the Little River Drainage District. This suit was brought for the recovery of the notes in possession of the district and not yet collected, and to recover the money from the district which it had received on notes collected. The position of the district is that as soon as it has collected a sufficient sum on these collateral notes to take care of the certificate of deposit for $50,000 and interest thereon, the balance if any, is to be transmitted to the Commissioner of Finance in charge of the Bank of Oran. The testimony discloses what notes are still in the possession of the district and the exact amount of cash received by the district on the collateral notes collected. These facts are not disputed. The plaintiff takes the position that this collateral was put up by the Bank of Oran to secure the money, and contends that it was an ordinary deposit, and that the Bank of Oran exceeded its statutory authority by putting up assets of the bank as collateral security to secure this certificate of deposit. The district maintains that it was not an

ordinary deposit, but a loan to the bank, and therefore the bank had express statutory authority to secure the funds with assets of the bank; and the further alternative that, even though the court should hold that this was not a loan, but an ordinary deposit, even then the bank had implied powers to put up the collateral as such act was in the regular and ordinary course of banking business, and that while the statutes do not contain any permission expressly permitting such action the bank has the implied power, and it is not prohibited by express statutory provision.

*"Furthermore the testimony disclosed and the court finds that the pledging of the collateral by the Bank of Oran was brought directly. to the attention of the Commissioner of Finance at divers times when the bank was examined from the date of the pledging of the collateral in 1921 until the closing of the bank in 1924. In January, 1924, when the bank was taken over by the Finance Commissioner, the examiner in charge wrote a letter to the district asking for a list of the bills receivable, which request was complied with by the district, and subsequently F. N. Keller, Special Deputy Commissioner in charge of the bank as late as September, 1926, assisted the district in the collection of some of the collateral notes and transmitted the proceeds of such collections to the district. At no time did the Commissioner of Finance, the examiner or the Special Deputy Commissioner of Finance, question the validity of the action of the bank up to the time this suit was brought on the 29th day of September, 1926.*

"It also appeared from the minutes of the board of supervisors of the Little River Drainage District that the funds thus placed in the Bank of Oran were referred to as a 'Deposit' and that the minutes of the board of directors of the Bank of Oran referred to these funds as a 'Deposit.'

"The certificate of deposit is in form as follows:

" 'Nov. 2, 1921.                                                  $50,000

" 'This certifies that The Little River Drainage District has deposited in the Bank of Oran Fifty Thousand Dollars ($50,000) payable to order of itself, in current funds at the rate of between six and eight per cent monthly on presentation of draft for the amount required. This certificate to bear interest at rate of 6% per annum compounded on daily balances.

" 'W. H. STUBBLEFIELD. JR., President.' "

The italics in the above are ours. The learned trial judge, after this statement and finding of the facts, then (in his written memoranda filed) proceeds to discuss elaborately the law of the case, and after such discussion, concludes his written memoranda thus:

"There is no doubt but that the funds deposited by the drainage district in the Bank of Oran were public funds, deposited by a municipal corporation—a political subdivision of this State. We are

not required in the proper disposition of this case, to determine whether or not a state bank has implied powers and authority to secure by its own assets a general deposit of an individual firm or corporation other than public funds or assets of a public character such as school funds, county money or funds of a drainage district.

"We reach the conclusion that the collateral notes pledged by the Bank of Oran to the Little River Drainage District as security for the certificate of deposit issued by the bank to the drainage district were properly and legally pledged under the implied powers and authority of the bank, that while the transaction might have been voidable, it was voidable only prior to the completed execution of the transaction, and cannot now be assailed, being not *mala in se* or *mala prohibita,* after the rights acquired under them have been fully performed on both sides. Judgment to go for the defendant on both counts, and the petition of plaintiff dismissed."

It appears that the cause was taken under advisement, and submitted on briefs. The following appears in the abstract of record:

"On September 27, 1926, during the regular July term of said court, this cause coming on for trial on the pleadings and the evidence before the court without a jury, the testimony in said cause was taken and heard by the court, and an instruction in the form of a peremptory instruction was tendered by the respondent at the close of all the testimony.

"Thereupon, and on the same day, the court took the matter under advisement, and both sides furnished briefs for the benefit of the court, and the cause was continued.

"Thereafter, on January 3, 1927, and during the regular November term of said court, this cause was taken up, argued and considered for final disposition, and the court gave the peremptory instruction heretofore tendered by the respondent and in accordance with his verdict for the respondent entered up judgment for it."

This outline will suffice for a general statement of the case. More minute details are left to the opinion.

I. The exact status of the money received by the Bank of Oran should be determined at the outset, because such determination may limit the matters for discussion and determination in this opinion. The written memoranda filed by the trial judge rather concisely, but fairly, states the matter, but in connection therewith we shall consider more fully the documents (letters) exchanged between the parties. The letter sent out by the respondent reads:

"The Little River Drainage District.

"Offering of Funds.

"From the proceeds of a recent sale of the district's bonds, The Little River Drainage District will have some funds available on or

about the 12th day of October, 1921, which may be *loaned* until required by the district.

"The district will require a certificate of deposit *for the amount loaned*, with surety bond *or other collateral*, satisfactory to and approved by the district, *as security*.

"It will not be necessary for the district to withdraw any of the funds under this offering before December 19, 1921, at which time between six per cent and eight per cent will be required and withdrawn, and, on or about the third Monday of each month thereafter, about the same percentage will be withdrawn, as required by the district.

"The district is offering these funds at the rate of 6-12% per annum; the interest to be computed on daily balances for the actual number of days the money is on deposit and the borrower to furnish the district monthly a statement of the amount of interest earned.

"If interested and you can use any part of the funds, write to the secretary promptly.

"B. F. BURNS, Secretary.

"Cape Girardeau, Mo.

"October 10, 1921.

"JOHN H. HIMMELBERGER,

"President Board of Supervisors."

The italics, supra, are ours, as they will be, in the documents following. To this form letter sent out generally in Southeast Missouri the Bank of Oran thus replied:

"Oran, Missouri, Oct. 12th, 1921.

"MR. B. F. BURNS, Secretary.

"Little River Drainage District,

"City,

"Dear Mr. Burns:

"We are in receipt of your notice of the 10th, inst., with reference to the funds of the Little River Drainage District.

"We desire to make application for $50,000 of these funds, and will either make a Surety Bond *or put up Bills Receivable* to your satisfaction.

"I remain, yours truly,

"BANK OF ORAN,

"By W. H. Stubblefield, Jr.,

"President."

Later the following record of the Bank of Oran was made:

"Oran, Mo. Feb. 17th, 1922.

"The board of directors of the Bank of Oran, met at 7 o'clock this day in special meeting, with Vice-President Caleb Matthews in the chair; President P. P. Marshall, F. S. Bice.

"The matter of putting up collateral security to the Little River Drainage District in the sum of $60,000 was brought before the

meeting, it was decided that the Bank of Oran furnish the Little River Drainage District with $60,000 of their Bills Receivable, *to be held as collateral security* until a Depository Bond could be secured, and on receipt of the Depository Bond the Little River Drainage District to return to Bank of Oran their Bills Receivable, the above named securities to be held by the Southeast Missouri Trust Company as the depository.

"CALEB MATTHEWS, Vice-President.

"P. P. MARSHALL, Secretary."

Then we have the following letter enclosing the original deposit of collateral, thus:

"Oran, Missouri, Feb. 29th, 1922.

"Mr. B. F. BURNS, Secretary,

"Little River Drainage District,

"Cape Girardeau, Mo.

"Dear Sir:

"We are enclosing our bills receivable in the sum of $47,116.50 to be held by the Little River Drainage District as a part security for their deposit in Bank of Oran for $50,753.76 we have other notes that are a little past due, we will get them renewed up to date just as soon as possible and will forward the additional security, we hope this will be satisfactory with your board until we can get the depository bond to you.

"Yours very truly,

"P. P. MARSHALL, Cashier."

It would appear that the $50,000 was actually turned over to the bank at an earlier date. The instrument which they call a *certificate of deposit* is in this language:

"Nov. 2, 1921.          $50,000

"This certifies that The Little River Drainage District has deposited in the Bank of Oran Fifty Thousand Dollars ($50,000) payable to order of itself in current funds at the rate of between six and eight per cent monthly on presentation of draft for the amount required. This certificate to bear interest at rate of 6% per annum computed on daily balances.

"W. H. STUBBLEFIELD, JR., President."

From these documents and papers, and a few other facts of record, we must determine the character of the transaction between the parties. To our mind these documents show a loan by the drainage district to the bank. The letter sent out by the drainage district said the funds would be loaned until required by the district. It further says that a certificate of deposit would be required *"for the amount loaned,"* and says what security would be required, i. e. (1) a surety bond, or (2) "other collateral, satisfactory to and approved by the district."

The third paragraph of the letter, supra, fixes the dates of payments, and the amounts to be repaid to the district. No payment was to be made before December 19, 1921, but at that date six to eight per cent of the loan was to be repaid, and then on the third Monday of each month thereafter about the same per cent was to be repaid. The 4th paragraph of the letter fixed an interest rate on the daily balances. In other places the transaction is spoken of as deposit. It is clear that it is not an ordinary bank deposit, nor is it the usual time deposit, which ordinarily cannot be drawn · upon until the maturity thereof. Such a deposit is not even drawn upon then, but the matter is closed by a surrender of the certificate and thereupon receiving the money—such usual time certificates of deposit do not go into the individual checking account at all. The instant case is peculiar, in that the money is to be repaid by ''draft for the amount required'' rather than by checks, as is usual in checking accounts. These drafts were to be presented at stated periods, and could not be presented at pleasure, or from day to day, as the drainage district might elect. This is but another evidence of the transaction being a loan rather than a deposit. All things considered we think the contract between the parties constitutes a loan, and we shall rule the case upon that theory.

II. Our conclusion that the whole transaction between the parties evidences a loan, eliminates the question as to whether or not there is  implied power in a bank to secure a mere general depositor by use of its bills payable. Seemingly the weight of authority elsewhere upholds the idea that such is the rule, but we decline to rule the question in the instant case. Even if we say that the transaction is a time deposit, and that considering the certificate of deposit alone we should say that it so shows, yet such a certificate is in effect a note. It is certainly not the usual deposit.

Thus in 7 Corpus Juris, page 646, sec. 334, such a certificate is defined in this language: ''A certificate of deposit is written acknowledgment by a bank or banker of the receipt of a sum of money on deposit which the bank or banker promises to pay to the depositor, to bearer, to the order of the depositor, or to some other person or to his order.''

And in 7 Corpus Juris, page 647, sec. 336, we find this pronouncement of the law: ''Although the view is not universally accepted, the overwhelming weight of authority supports the view that a certificate of deposit in the ordinary form is in substance and in legal effect a promissory note and not merely a receipt for money. Where such certificates are negotiable their transfer is governed by the rules that apply to promissory notes, as is also the liability of the parties thereon.''

As to the form of this character of a deposit the same authority in Section 337 on same page says: "It would seem to be immaterial in what form a certificate of deposit is drawn, provided it has the essential characteristics of such an instrument. These characteristics are that it should acknowledge the receipt of a deposit and contain a promise of repayment, the latter being essential to distinguish it from a mere deposit slip."

We repeat what we said, supra, this instrument is not the ordinary deposit slip handed to a general customer of a bank upon the receipt of money to be placed to such customer's credit.

The offer from the drainage district was to loan funds, upon certain conditions. The offer was accepted by "Bank of Oran, By W. H. Stubblefield, Jr., President." Such signature carries the idea that the bank itself is acting, and presumably through its directors. The board of directors of the Bank of Oran specifically confirms the matter by directing the transfer of $60,000 of their bills receivable, and thereafter such bills receivable were, in accordance with the resolution or direction of the board of directors, transferred to or for the benefit of the drainage district. This shows that the Bank of Oran, through its president and board of directors, was borrowing this money from the Drainage District. The whole transaction was in the name of the Bank of Oran. No mere cashier, or officer acting as such cashier, was making this contract, or transferring these securities as collateral. The offer was accepted by the Bank of Oran, through its president. The transfer was made by the board of directors, thus ratifying (if it had not been previously authorized, as we must presume) the act of the president. Strictly speaking neither Section 11752, nor Section 11762, Revised Statutes 1919, applies to this case. These sections place limitations on officers of the bank as to certain named things, which includes the hypothecating of the bank's notes and securities, but they do not limit the bank itself, when acting through its directors. That the bank itself can borrow money and pledge its notes as security for the payment thereof cannot be questioned. It is done every day in the commercial world. Nor is there any limitation as to the person or corporation from whom it may borrow. When we say that banks cannot borrow money we have gutted the modern banking business. When we say that the bank can borrow money, we mean when acting through its board of directors, and the authority given by such board of directors to other agents of the bank. And further the presumption is that the agent is acting lawfully and within authority, and not wrongfully and without authority.

We suggested, supra, that there was no limitation as to the individual or corporation from whom such bank borrowed the money.

In the instant case we should say that drainage districts are required to secure the funds deposited by them. [R. S. 1919, secs. 4401, 4497.] But is it not necessary to discuss the right of the district to loan their funds and take security therefor, because the bank, receiving the loan and using the money, could not well say that the district could not make a loan.

We conclude that this transaction was a loan to the bank, and a loan negotiated and made by such bank through its board of directors, and that the notes held by the drainage district, were hypothecated by the bank through its board of directors, and the bank, as well as the State Commissioner of Finance, is bound by the contract of loan made with the drainage district. In other words the Commissioner of Finance cannot disavow a legal and binding contract made by the bank, before its failure.

III.  What we have said, supra, disposes of the case.  However, there is another theory of the law which just as effectively disposes of the case. That the bank got the benefit of the funds of the drainage district is uncontroverted.  The contract was *fully executed* by the drainage district, and in such case, *ultra vires*, even if pleaded, cannot be successfully invoked.  [McCormick v. Bank, 304 Mo. 1. c. 288-9; Schlitz Brewing Co. v. Poultry & Game Co., 287 Mo. 1. c. 407; Millinery Co. v. Trust Co., 251 Mo. 579; National Bank of Commerce v. Francis, 296 Mo. 1. c. 195 and 196.]

In the Schlitz Brewing Co. case, supra, J. T. BLAIR, J., has fully collected the authorities, and says:

"With respect to estoppel to plead *ultra vires* to a contract fully executed on one side defendants rely upon the Federal rule, in the main. This court and the Court of Appeals of this State long since adopted the rule in force in most of the states, which, we said in Millinery Co. v. Trust Co., 251 Mo. 1. c. 579, had been tersely stated by ROMBAUER, P. J., in Winscott v. Inv. Co., 63 Mo. App. 1. c. 369, to be that 'the defense of *ultra vires* is not admissible where the contract has been fully executed on one side, unless it is a contract expressly prohibited by law.'  Other decisions of like import are: First National Bank v. Guardian Trust Co., 187 Mo. 1. c. 522 et seq., and cases cited; Cass Co. v. Ins. Co., 188 Mo. 1. c. 13 et seq., and cases cited; St. Louis v. Railroad, 248 Mo. 1. c. 27; Kellogg-Mackay Co. v. Havre Hotel Co., 199 Fed. 1. c. 733, 734, and cases cited; Fletcher's Cyclopedia, Corporations, sec. 1543, p. 2609, et seq.; L. R. A. 1917A, p. 749 et seq.; 14A Corpus Juris, p. 319, sec. 2169, et seq.  The principle extends to executed contracts for the purchase of goods in which the corporation has no charter authority to deal.  [Erb v. Yoerg, 64 Minn. 1. c. 465; Re Assignment of Pendleton Hardware Co., 24 Ore. 1. c. 332; Whitehead v. Am. L. & B. Co., 70 N. J. Eq. 585;

Iowa Drug Co. v. Souers, 139 Iowa, l. c. 79, 80; Albin Company v. Commonwealth, 123 Ky. l. c. 305, 306; Osmer v. Brokerage Co., 155 Mo. App. 211; Vermont Co. v. DeSota Co., 145 Iowa, l. c. 494, 495; Watts Mercantile Co. v. Buchanan, 92 Miss. l. c. 543, 544; Wrightsville H. Co. v. McElroy, 254 Pa. l. c. 429; Lemmon v. Rubber Co., 260 Pa. l. c. 32, 33.]''

The Missouri cases cited as supporting a contrary view involved questions concerning the enforcement of executory *ultra vires* agreements, and are thereby distinguished from the instant case.

We are not dealing here with a contract expressly prohibited by law, and there is no contention that we are dealing with such.

So from any angle the judgment *nisi* was for the right party, and should be affirmed. It is so ordered. All concur.