FARMERS & TRADERS BANK OF AUXVASSE, Appellant, v. J. S. HARRISON ET AL.—12 S. W. (2d) 755.

Division One, December 31, 1928.

*Cave & Cuthbertson* and *Rodgers & Buffington* for appellant.

*Baker & Baker* and *Greensfelder, Rosenberger & Grand* for respondents.

ELLISON, C.—This is a suit on a bond given by the defendants as sureties to the plaintiff, the Farmers & Traders Bank of Auxvasse. The principal in the bond is another bank called the Auxvasse Bank, but it had failed before the suit was brought, and was not joined as a defendant. The amount involved is $12,488.06 with interest. The court gave an instruction in the nature of a demurrer to the evidence at the close of the plaintiff's case and the plaintiff thereupon took an involuntary nonsuit with leave, etc. This appeal followed the court's refusal to set aside the nonsuit.

Both banks were located at the village of Auxvasse in Callaway County, and were organized and operated under the banking laws of this State. For two years prior to May 7, 1923, the appellant bank had been county depository, and on that day was again designated as such for a like period of two years. Some two months thereafter, on July 18, 1923, the $40,000 bond in suit was executed, the Auxvasse Bank signing as principal by F. E. Stokes, its cashier, and the five defendants signing as securities, they being five of the nine directors of the Auxvasse Bank. The bond provided:

"The condition of the above bond is such, however, that Whereas, the said Farmers & Traders Bank of Auxvasse, Missouri, was on the 7th day of May, 1923, duly selected as depository of all the public funds of every kind and description going into the hands of the county treasurer, the deposit of which was not otherwise provided for by law, of the County of Callaway and State of Missouri, for a period of two years, or until the time fixed by law for another selection of such depository; and,

"Whereas, the Farmers & Traders Bank of Auxvasse, Mo., is redepositing a portion of said funds with the Auxvasse Bank, Auxvasse, Missouri,

"Now, Therefore, if the said Auxvasse Bank, Auxvasse, Missouri, shall faithfully perform all duties and obligations devolving upon it under the law and by the agreement mentioned above, then this obligation to be void; otherwise to remain in full force and effect."

Between May 9 and the execution of the bond on July 18th, the appellant bank made three separate deposits in the Auxvasse Bank aggregating $12,000 and took demand certificates of deposit therefor. Following that, on August 6th a deposit of $2500 was made and a demand certificate issued therefor. This made $14,500 in demand certificates of deposit. On August 11th this $14,500 was converted into a checking account. All told, twelve separate deposits aggregating about $50,500 were made at different times and in different amounts after the bond was executed, making about $62,500 during the whole period of the banking relation, and during that same time there were twenty-one withdrawals, so that when the bank closed on July 7, 1924, the balance in the checking account stood at $12,-488.06. The State Finance Department took charge, and refused to pay out this balance, of course, when demand was made therefor.

There was no entry in any corporate or other book or record of the Auxvasse Bank giving Stokes, its cashier, authority to execute the bond in its name or behalf, and likewise no mention of the bond or of any separate agreement between the two banks for the redeposit of county funds. On this latter point the cashier of the Farmers & Traders Bank testified his bank deposited no funds in the Auxvasse Bank except pursuant to the agreement expressed in the bond, and

that the former bank had kept no money in the latter bank before the opening of the account mentioned in evidence and heretofore referred to. Other facts will be noted, as necessary, in the course of the opinion.

I. The best way to dispose of the case will be to take up the points made by the respondents in defense of the trial court's ruling. The first of these is that there was no evidence showing the funds deposited in the Auxvasse Bank were in fact *county* money. As to this, it is true the evidence affirmatively shows funds deposited by the county in the Farmers & Traders Bank were not segregated or placed on special deposit so their identity would be preserved; on the contrary, they were carried in certain checking accounts running in the name of the County Treasurer and went into the general assets of the bank. In the same way remittances by the Farmers & Traders Bank to the Auxvasse Bank for deposit were drawn from these general assets, and there was no notation on the drafts, checks or other instruments by which funds were transferred, that the money was county money.

But we think there was enough evidence to take the case to the jury, for the cashier of the Farmers & Traders Bank testified without objection that the deposits made by his bank in the Auxvasse Bank were county money, and further said they were made possible solely by reason of increased assets due to having the county money on hand. It *seems*, also, that all credits to the account of the Farmers & Traders Bank in the Auxvasse Bank were ultimately drawn against the accounts of the County Treasurer in the former bank, though the evidence is not clear on that point.

II. The next point is that the bond was meaningless—a *nudum pactum,* as the brief says. The concluding paragraph required the Auxvasse Bank "faithfully (to) perform all duties and obligations devolving upon it under the law and by the agreement mentioned above." Respondent says there is no agreement "mentioned above," and that the Auxvasse Bank had no duty under the law because it was not the bank which had been selected by the county as the depository.

We cannot assent to that. It is true no agreement is mentioned in terms earlier in the bond, but there are recitals (1) that the Farmers & Traders Bank has been appointed depository of county funds, (2) and that it is redepositing a portion of said funds with the Auxvasse Bank. Thereafter the instrument refers to these recitals as an agreement, and binds the Auxvasse Bank faithfully to perform the duties devolving upon it under the law and by the agreement. In

our opinion all this taken together is sufficient to express the meaning that by agreement the Farmers & Traders Bank was depositing and the Auxvasse Bank receiving as *county money* the funds mentioned in evidence, and that the latter bank, in holding the money, should comply with the requirements of law respecting funds of that character. We shall consider further the meaning of the bond in discussing Point III.

At all events, the deposits were money, whether treated as county money or not, and under the law certain duties devolved on the Auxvasse Bank by reason of the banking relation created, just as would be the case with any individual deposit. Among these were the obligations faithfully to keep and account for the money and to pay upon presentation all checks lawfully drawn by the appellant against the account. [Secs. 971, 976, R. S. 1919; Waggoner v. Bank of Bernie (Mo. App.), 281 S. W. 130, 131.] So, on any theory, it cannot be said the bond was meaningless.

III. The next point is that the record conclusively shows the bond was without consideration. Respondents' contention is that since the appellant bank admittedly placed the substantial sum of $12,000 in the Auxvasse Bank over a two months period before the bond was signed, and since there is no evidence that a bond was then contemplated, therefore it stands proven the practice of redepositing county funds was not referable to the bond. But we cannot follow this reasoning. Even if the $12,000 was deposited voluntarily, what right have we to say the remaining $50,500 was put in on that same basis, or that an agreement with respect thereto did not induce the execution of the bond?

In point of fact we think the giving of the bond was so induced, and that it covered the whole $62,500 deposited. The instrument recites that whereas the appellant bank was appointed depository of county funds on May 7, 1923, for a period of two years, and whereas the bank *"is redepositing"* a portion of *"said funds"* in the Auxvasse Bank, therefore, etc. In our view the words "is redepositing" with their context signify a current and continuing arrangement covering all moneys received by the appellant bank under the county court appointment and redeposited in the Auxvasse Bank. This would be a valid consideration for securing the whole deposit since much of the agreement was still executory. Thus, in 28 Corpus Juris, paragraph 51, page 919, it is said: "But where a guarantee expressly covers past and future transactions and is supported by a consideration arising out of the future transactions, it is good as to the whole."

In connection with the foregoing the following facts should be considered. Not long after the bond was given on July 18th the appellant bank surrendered its four demand certificates of deposit aggregating $14,500, which included the $12,000 put in before the execution of the bond, and opened a checking account with the Auxvasse Bank in which the $14,500 was placed, as were all subsequent deposits. There is an allowable inference of more than a little weight that the whole fund was thus intended to be, and was, brought under the protection of the bond, even if the $12,000 or the $14,500 had not been before. Strictly speaking, the certificates of deposit did not evidence *deposits* in the ordinary sense. They were in effect *notes* (Cantley v. Little River Drainage Dist. (Mo. en Banc), 2 S. W. (2d) 607, 611; 3 R. C. L. 570, 573, pars. 198, 202) ; and so it can be truly said that even this $14,500 was not placed on deposit as the bond required until after the bond was given.

IV.  Another point urged, but properly without much emphasis, is that there was conclusive evidence the bond sued on had been altered. As a matter of fact there is little if any evidence at all. Toward the close of the case respondents' counsel asked a witness to examine the bond and say whether it did not appear the names of the securities had been written in the body of the instrument with a different typewriter ribbon from that used in writing the rest of it; and the witness answered that such appeared to be the fact. It was then shown the date had been filled in at the close of the bond in the handwriting of the cashier, F. C. Stokes. In the briefs here, counsel for respondents tell us the verified copy of the bond attached as an exhibit to the petition omitted the names of the securities in the body thereof, and that the trial judge examined both copies and *may* have found conclusive evidence of alteration. The exhibit copy of the bond is not preserved in the record, nor is there any showing that the court compared the two instruments or passed on the integrity of the original. This point is ruled against the respondents. When blanks are left in a signed written instrument, obviously to be filled out, the filling of them raises a question of authority rather than one of altering a completed instrument. [2 C. J. 1242, par. 119.]

V.  The three related propositions next discussed are the ones featured in the briefs. We shall state and consider them together. But preliminary to that it should be explained this thought underlies the first two of them. When a bank is designated as depository of public funds it is often required by a statute to give security; such was the case here with respect to the appellant bank, the county depository. [Section 9585, Revised Statutes 1919.] But when the appellant redeposited a part of the

county money in the Auxvasse Bank, the latter did not thereby become a county depository in the statutory sense, nor did the appellant act otherwise than as an ordinary, private depositor like any other bank customer. It was simply an arrangement between two private corporations.

And so the respondents contend the bond was not binding on them as sureties because it was void as to their principal, the Auxvasse Bank, in this: (1) that the giving of security to a private depositor by the Auxvasse Bank was an act outside the bank's charter powers, under Sections 9749 and 11737, Revised Statutes 1919, and Section 7, Article XII, Constitution of Missouri, and hence *ultra vires;* (2) that the preference of one private depositor over another is inequitable and illegal as a matter of public policy; (3) and that even if the foregoing reasons fail, the bond was not effective in this instance, because the cashier, Stokes, had no right to execute it for the bank, since no authority thereto was recorded in the minutes of the institution.

Whether there is implied power in a bank to secure a mere general depositor is a question that appears never to have been determined in this State. The point was raised but not decided in Cantley v. Little River Drainage Dist., supra, 2 S. W. (2d) l. c. 611, and in Huntsville Trust Co. v. Noel, ante, 749; and it is not open for decision here, because the appellant pleaded estoppel and the evidence tends to show the Auxvasse Bank got at least much the greater part of the money in controversy and held all of it on faith of the bond. The contract was performed by appellant. In these circumstances the defense of *ultra vires* is not available. [Cantley v. Little River Drainage Dist., supra, 2 S. W. (2d) l. c. 612.] The giving of the bond was neither *malum in se* nor *malum prohibitum.* The mere facts that the banking laws do not say a bank may give security for its general deposits, and that the general corporation statute and Constitution do say no corporation "shall engage in business other than that expressly authorized in its charter" etc., did not make the act of giving security *itself* unlawful, apart from the charter provisions. [See 14a C. J. 583, par. 2529; 7 R. C. L. 673, par. 677.]

But it is urged that independent of the statute the giving of security was inequitable and contrary to public policy, and hence absolutely void. There would be more logical force to this contention if the Auxvasse Bank had secured the deposits out of its assets by pledge or otherwise, and thus encumbered or diminished the fund to which common creditors were compelled to look; but all the bank did do was to sign a bond, as principal, which created no more of a claim against its assets than would

have been raised by the mere acceptance of the money without any bond. In other words no part of the bank assets was diverted to any special use or purpose, and the only advantages accruing to the appellant bank were that the bond expressed the *contract* between the parties and brought in the respondents as personal sureties. There is no question but that the bank could make a special contract about the deposit (7 C. J. 642, par. 327) ; and it is clear there was nothing wrong or illegal in the bank's getting third persons to secure the performance of its obligation. So we cannot see wherein the bond discriminated against other depositors and creditors, even if the rule be as respondents claim, in a proper case.

The next and last point is that even if the bond otherwise would have been effective, it was not binding on the Auxvasse Bank in  this instance because the cashier, Stokes, had no authority to sign it for the bank. There are certain things that Section 11762, Revised Statutes 1919, forbids a bank cashier to do unless authorized by the board of directors on the bank records. Executing a bond to secure deposits is not mentioned as one of them. Whether such an act comes within the prohibition by implication, or is forbidden by the general laws of agency as applied to such institutions, it is unnecessary to decide. For even though the bank was not bound the respondent securities are nevertheless liable. As heretofore stated there was no positive illegality in the contract. The infirmities, if any, arise out of a lack of the necessary corporate authority or an improper exercise of it. In these circumstances the securities cannot claim exemption though the principal escape.

In Jamison v. Griswold, 2 Mo. App. 150 and 6 Mo. App. 405, the General Assembly had passed an act to establish Forest Park in St. Louis, and creating a commission which was authorized to issue bonds in payment for the park site. Certain of the bonds were executed to the defendant, Griswold, who transferred them to the plaintiff, Jamison. Thereafter the act was declared unconstitutional by this court. It was held the bonds were valid as against Griswold. In Weed Sewing Machine Co. v. Maxwell, 63 Mo. 486, the defendant, as married woman, as principal, executed a bond to the plaintiff with her co-defendants as securities, to secure the performance of her contract. This was before the passage of our Married Women's Act. In a suit on the bond it was held the defendant principal was not liable but that the sureties were. To the same effect are Lobaugh v. Thompson, 74 Mo. 600, 602, and Alexander v. Lydick, 80 Mo. 341, 347. Such defenses are personal to the principal and do not blight the whole contract. The sureties are estopped to raise them.

A number of decisions from other states extending the doctrine to corporate undertakings like the one sued on in the instant case,

will be found in the notes to Birken v. Tapper, 24 A. L. R. 832, 847, and Gates v. Tebbetts, 20 L. R. A. (N. S.) 1000. Respondents cite cases holding that where a bond has not been signed by the principal it is not binding on the sureties. [Gay v. Murphy, 134 Mo. 98, 106, 34 S. W. 1091; North St. Louis B. & L. Assn. v. Obert, 169 Mo. 507, 517, 69 S. W. 1044; Losee v. Crawford (K. C. Ct. App.), 5 S. W. (2d) 105, 108.] They are not in point, for there the bonds were not completed instruments in the absence of evidence that the sureties intended to be bound by them as they stood.

It appearing from the record that the appellant made out a prima-facie showing, the cause is reversed and remanded with directions to set aside the order of involuntary nonsuit and to reinstate the case. *Lindsay* and *Seddon, CC.,* concur.

PER CURIAM:—The foregoing opinion by ELLISON, C., is adopted as the opinion of the court. All of the judges concur.